NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11902

KATZ, NANNIS & SOLOMON, P.C., & others[1]  vs.
BRUCE C. LEVINE & another.[2]

Norfolk.      December 10, 2015. - March 9, 2016.

Present: Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.

Massachusetts Arbitration Act. Arbitration, Judicial review,
    Scope of arbitration, Confirmation of award, Authority of
    arbitrator, Damages, Attorney's fees. Contract,
    Arbitration. Practice, Civil, Attorney's fees, Costs.
    Damages, Attorney's fees.

Civil action commenced in the Superior Court Department on
February 27, 2013.

A motion to confirm an arbitration award was heard by
Patrick F. Brady, J.; a motion for attorney's fees and costs was
heard by him; and entry of separate and final judgments was
ordered by him.

The Supreme Judicial Court granted an application for
direct appellate review.

---

[1] Allen G. Katz, Lawrence S. Nannis, and Jeffrey D. Solomon.

[2] Levine, Caufield, Martin & Goldberg, P.C. (LCMG).

Thomas J. Carey, Jr. (Daniel J. Cloherty & Victoria L. Steinberg with him) for Bruce C. Levine.
Warren D. Hutchison (Nancy M. Reimer with him) for the plaintiffs.
Joseph S.U. Bodoff, for Levine, Caufield, Martin & Goldberg, P.C., was present but did not argue.

BOTSFORD, J. The central question presented in this appeal is whether parties to a commercial arbitration agreement may alter by contract the scope or grounds of judicial review of an arbitration award that are set out in the Massachusetts Uniform Arbitration Act for Commercial Disputes (MAA), G. L. c. 251. We decide that the grounds of judicial review are limited to those delineated in G. L. c. 251, §§ 12 and 13.

Background. The defendant Bruce C. Levine and the plaintiffs Allen G. Katz, Lawrence S. Nannis, and Jeffery D. Solomon were members of an accounting firm known as Levine, Katz, Nannis & Solomon, P.C. (LKNS or firm). They were each a shareholder in the firm, and a party to a stockholder agreement dated October 1, 1998 (agreement), that governed their professional association and relationship.[3] In 2011, Katz, Nannis, and Solomon, purporting to act pursuant to the agreement, voted to require the withdrawal of Levine as a director and stockholder in LKNS; Levine disagreed that the termination of his stockholder interest and position was in

---

[3] At all times relevant to this case, Levine, Katz, Nannis, and Solomon were the sole stockholders of the former accounting firm Levine, Katz, Nannis & Solomon, P.C. (LKNS or firm).

accordance with the agreement's terms, and the arbitration at issue in this case concerned that dispute. We summarize the relevant provisions of the agreement, the parties' dispute leading to arbitration, and the arbitration award, followed by a summary of the proceedings in the Superior Court that led to this appeal.

The agreement. The agreement provides that a stockholder may withdraw voluntarily or be required to withdraw involuntarily. Two provisions in the agreement relate to involuntary withdrawal:

> "4(e) Involuntary Withdrawal. A Stockholder may be required to withdraw from the Corporation, for any reason, upon the affirmative vote of the holders of at least 75% of the issued and outstanding Shares, excluding the Shares of the subject Stockholder.

> "4(f) For Cause Withdrawal. A Stockholder may be required to withdraw from the Corporation for 'Cause.' 'Cause' shall be deemed to exist upon the occurrence of any of the following:

>> "(i) Commission of an act of fraud, dishonesty or the like involving the Corporation or any of its clients."[4]

Under section 5(a)(i) of the agreement a voluntarily withdrawing stockholder is entitled to the redemption of his shares at "an amount equal to the accrual basis book value of the [firm]"

---

[4] Section 4(f) of the agreement delineates three other "occurrence[s]" that fit within the definition of "[c]ause": conviction of a crime involving fraud, dishonesty or moral turpitude; loss of license to practice public accountancy; and sexual harassment of any employee. None of these has relevance to this case.

multiplied by the percentage of shares issued and outstanding held by the withdrawing stockholder. Section 5(a)(i) also provides that a stockholder subject to an involuntary withdrawal, but not "for cause," is also generally entitled to redemption. However, section 5(a)(iii) provides:

> "If the withdrawal is for Cause (as defined in Section 4[f]) or as described in Section 8(a)(iii) [i.e., where there is involuntary withdrawal and stockholder competes with the firm], the subject Stockholder shall forfeit his Shares . . . and the Redemption Price shall be $zero."

In addition to the redemption of shares, under section 8(a)(i), in certain circumstances, a withdrawing stockholder is entitled to the payment of deferred compensation. However, under section 8(a)(v), a stockholder whose withdrawal is for cause receives no deferred compensation. In addition, under section 8(a)(iii), if a stockholder's withdrawal is an "involuntary withdrawal pursuant to Section 4(e)" and the stockholder competes with the firm within three years after his withdrawal, he receives no deferred compensation and must compensate the firm pursuant to a stipulated formula. A stockholder who withdraws and within three months employs an employee of the firm also must pay liquidated damages to the firm, under section 8(a)(vii).

Section 13(i) provides that the agreement is to "be subject to and governed by the laws of the Commonwealth of Massachusetts pertaining to agreements executed in and to be performed in the

Commonwealth of Massachusetts."  Section 13(j) contains an arbitration clause that provides in relevant part:

> "Binding Arbitration.  In the event of any dispute concerning any aspect of this Agreement, the parties agree to submit the matter to binding arbitration before a single arbitrator appointed by the American Arbitration Association . . . .  The decision of the arbitrator shall be final; provided, however, solely in the event of a material, gross and flagrant error by the arbitrator, such decision shall be subject to review in court. . . .  [T]he party against which final, adverse judgment is entered [shall be] responsible for (in addition to its own) the other party's(ies') costs and expenses, including reasonable attorneys' fees."

The dispute.  The arbitration at issue here arose out of a dispute between Levine and the other three shareholders of LKNS, relating to work Levine had performed for a firm client, Levine's cousin Linda Sallop and her company (collectively, Sallop).  Sallop sustained tax losses in the amount of $750,000 when the Internal Revenue Service (IRS) refused to grant capital gains treatment for an employee stock ownership plan in 2002 because the IRS did not receive the necessary documentation.  In 2004, Levine knew that these events created "problems with Sallop's [2002] tax return."  In April, 2007, Sallop threatened to sue Levine and LKNS.  Five months later, Levine submitted a professional liability insurance renewal application on behalf of the firm that did not mention the lawsuit threatened by Sallop.  Sallop sued Levine and LKNS in September, 2008, and Levine retained counsel to represent himself and LKNS in

defending against the suit and the threatened attachment of LKNS's assets. Levine did not inform Katz, Nannis, or Solomon of the lawsuit, of Levine's retention of legal counsel on behalf of the firm, or of Sallop's motion to attach LKNS's assets at the time that the lawsuit and motion were filed. Instead, he did so for the first time during a stockholder meeting in February, 2009, just before his deposition in the case. In March, 2010, Levine informed the three that LKNS's insurance coverage was rescinded because Levine had failed to disclose Sallop's threatened lawsuit in a renewal application.

At a special meeting held August 10, 2011, Katz, Nannis, and Solomon voted to terminate Levine's employment and to remove him as an officer and director of the firm, which then changed its name to Katz, Nannis & Solomon, P.C. (KNS). Soon after his termination, Levine opened his own accounting firm, Levine, Caufield, Martin & Goldberg, P.C. (LCMG), and a number of employees of LKNS left that firm and joined Levine at LCMG. The nature and terms of Levine's withdrawal from the firm and his subsequent competition with KNS were the bases of the dispute between Levine and the other LKNS stockholders, and became the subject of the arbitration proceeding at issue here.

The arbitration and award. Pursuant to the terms of the agreement's arbitration clause, the dispute was submitted to binding arbitration before a single arbitrator appointed by the

American Arbitration Association. The arbitrator heard from eleven witnesses over nine days. On December 19, 2012, the arbitrator issued a partial final award in which he concluded that Levine had been validly terminated or "withdraw[n]" involuntarily as a stockholder in accordance with the agreement, that there was sufficient evidence to require Levine's withdrawal "for cause," and that he had been terminated for cause. The arbitrator concluded, however, that it did not make any difference whether Levine's involuntary withdrawal or termination was "for cause" pursuant to section 4(f) of the agreement or "for any reason" pursuant to section 4(e), because, following his termination, Levine competed with KNS. The arbitrator further found that because Levine was terminated for cause, he forfeited his shares and was not entitled to receive deferred compensation. With respect to damages, the arbitrator determined that Levine would be liable to KNS for, among other things, amounts paid by former clients of LKNS to Levine after his termination for work performed before his termination, liquidated damages for competing with KNS following his termination, as well as liquidated damages on account of employees who left KNS to join Levine. The arbitrator denied both parties' requests for attorney's fees. After a hearing on

damages, the arbitrator issued the final award, ruling that KNS was to receive $1,749,293.20,[5] plus statutory interest.

Confirmation of the arbitration award. On February, 2013, KNS filed the present action in the Superior Court seeking confirmation of the arbitration award and also asserting claims to ensure payment of the arbitration award and prevent Levine from diverting money to LCMG.[6] Levine filed an answer, an opposition to KNS's motion to confirm the award, and a cross motion to vacate or modify the arbitration award. A Superior Court judge (motion judge) allowed KNS's motion to confirm the award and denied Levine's cross motion to vacate or modify it. KNS moved for an award of attorney's fees, and the judge allowed the motion. With a stipulation by the parties in place that secured any judgment that would enter against Levine, KNS moved to dismiss the remaining claims against Levine and all claims

---

[5] The arbitrator stated that the final award consisted of $480,412 for Levine's competing with Katz, Nannis & Solomon, P.C. (KNS), $200,477.52 as liquidated damages for the employees of the firm (LKNS) hired by his new firm, and $1,068,403.70 for amounts owed on account of the accounts receivable and work in progress related to work that Levine had performed for clients of LKNS before he was terminated but for which he had received payment at his new firm.

[6] The complaint included counts against Levine to enjoin his encumbering or transferring assets, and to secure a judgment directing Levine to satisfy the award; and counts against Levine, Caufield, Martin & Goldberg, P.C. (LCMG), for injunctive relief preventing it from encumbering or transferring assets as well as for conversion, money had and received, and creation of a constructive trust.

against LCMG.  In February, 2014, judgment entered confirming the arbitration award, dismissing the remaining claims, and granting KNS attorney's fees and costs.  Levine thereafter filed a motion for a new trial, to amend or alter the judgment, or for relief from judgment, which the motion judge denied.  Levine filed a timely appeal from both the judgment and the denial of his postjudgment motion.  We granted the defendants' application for direct appellate review.

Discussion.  1.  Scope of judicial review of arbitrator's decision.  The parties' agreement to arbitrate is governed by the MAA, G. L. c. 251.  See G. L. c. 251, § 1.[7]  The role of courts with respect to confirming, vacating, and modifying an arbitration award is outlined in §§ 11 through 13 of the MAA.  Section 11 provides that "[u]pon application of a party, the court shall confirm" an arbitration award unless "grounds are urged for vacating or modifying or correcting the award" as provided in §§ 12 and 13.  G. L. c. 251, § 11.  Section 12 sets

---

[7] Massachusetts adopted the Massachusetts Uniform Arbitration Act for Commercial Disputes (MAA) in 1960.  See St. 1960, c. 374.  The MAA superseded a 1925 statute that was modeled after the New York arbitration statute.  See Report of the Commission on Uniform State Laws, 1960 House Doc. No. 84, at 7.  New York's arbitration statute also served as a model for the Uniform Arbitration Act (UAA) promulgated in 1955.  P.A. Finn, B.J. Mone, & J.S. Kelly, Mediation and Arbitration 121 (2015-2016).

forth the available grounds for vacating an arbitration award.[8]
As is relevant here, under § 12, the court shall vacate an award
if it "was procured by corruption, fraud or other undue means,"
or "the arbitrators exceeded their powers."  G. L. c. 251,
§ 12 (a) (1), (3).[9]  Otherwise, a court is "strictly bound by an
arbitrator's findings and legal conclusions, even if they appear
erroneous, inconsistent, or unsupported by the record at the
arbitration hearing."  Lynn v. Thompson, 435 Mass. 54, 61

---

[8] Section 12 of the MAA provides in relevant part:

"(a)  Upon application of a party, the court shall vacate
an award if: --

"(1)  the award was procured by corruption, fraud or other
undue means;

"(2)  there was evident partiality by an arbitrator
appointed as a neutral, or corruption in any of the
arbitrators, or misconduct prejudicing the rights of any
party;

"(3)  the arbitrators exceeded their powers;

"(4)  the arbitrators refused to postpone the hearing upon
sufficient cause being shown therefor or refused to hear
evidence material to the controversy or otherwise so
conducted the hearing . . . as to prejudice substantially
the rights of a party; or

"(5)  there was no arbitration agreement and the issue was
not adversely determined in proceedings under [§ 2]
. . . ."

G. L. c. 251, § 12.

[9] Section 13 of the MAA allows a court to modify or correct
an award in certain ways that do not affect the merits of the
decision or the controversy.  G. L. c. 251, § 13.

(2001), cert. denied, 534 U.S. 1131 (2002). An error of law or fact will not be reviewed by a court unless there is fraud; even a grossly erroneous decision is binding in the absence of fraud. Trustees of the Boston & Me. Corp. v. Massachusetts Bay Transp. Auth., 363 Mass. 386, 390 (1973).

At the core of Levine's challenge to the arbitrator's award -- and to the motion judge's confirmation of the award -- is the claim that the arbitrator fundamentally misinterpreted the agreement. Contrary to that interpretation, Levine argues that an involuntary withdrawal under section 4(e) of the agreement is a wholly separate and distinct type of withdrawal from a withdrawal for cause under section 4(f), and that, insofar as the arbitrator found that Levine's withdrawal was "for cause" under section 4(f), Levine cannot be made subject to any prohibition against competition, because, in his view, the penalty for competing with the firm only applies if the shareholder is terminated "involuntarily" under section 4(e). Levine acknowledges that the arbitration agreement is governed by G. L. c. 251. He argues, however, that to the extent his objection to the award is a claim that the arbitrator committed an error of law, Levine is entitled to have a court consider the merits of his claim because in the arbitration clause of the agreement, the parties specifically provided for judicial review of an award to determine whether there was a "material, gross

and flagrant error" by the arbitrator.[10]  He reasons that arbitration is strictly a creature of contract, that the aim of the MAA is to enforce the parties' contractual agreement to arbitrate, and that, therefore, the parties' agreed-upon standard of judicial review should be enforced.

Although arbitration is a matter of contract, Commonwealth v. Philip Morris Inc., 448 Mass. 836, 843 (2007), we disagree that parties, through contract, may modify the scope of judicial review that is set out in §§ 12 and 13 of the MAA.  As previously stated, the directive of G. L. c. 251, § 11, is that a court "shall confirm" an award unless grounds for vacating it pursuant to §§ 12 and 13 are shown; this statutory language "carries no hint of flexibility."  See Hall St. Assocs., L.L.C. v. Matell, Inc., 552 U.S. 576, 587 (2008) (Hall St.).

In Hall St., the United States Supreme Court considered whether the grounds stated in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2012), for vacating or modifying an arbitration award were the exclusive grounds, or whether parties could expand the grounds -- and thereby expand the scope of judicial review -- by the terms of their agreement.  See 552

---

[10] The language in section 13(j) of the agreement that Levine points to is the following:  "The decision of the arbitrator shall be final; provided, however, solely in the event of a material, gross and flagrant error by the arbitrator, such decision shall be subject to review in court" (emphasis added; emphasis in original omitted).

U.S. at 578, 586.  The Court held that under the FAA the statutory grounds are the exclusive grounds for judicial review and parties are unable to contract otherwise.  Id. at 586.  However, the Court also made clear that States are free to reach a different result on grounds of State statutory law or common law.  Id. at 590 ("The FAA is not the only way into court for parties wanting review of arbitration awards:  they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable").[11]  Nonetheless, the Court's analysis of the FAA in Hall St. remains instructive and we reach the same result in relation to the MAA.

The provisions of the MAA governing judicial review of an arbitration award are substantively (and often linguistically) identical to the analogous provisions in the FAA.[12]  The Court in

---

[11] Some States have construed their arbitration statutes to permit parties to modify by contract the scope of judicial review of an arbitration award.  See Raymond James Fin. Servs., Inc. v. Honea, 55 So. 3d 1161, 1163, 1169 (Ala. 2010); Cable Connection, Inc. v. DIRECTV, Inc., 44 Cal. 4th 1334, 1340 (2008); Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 358 (1994); Nafta Traders, Inc. v. Quinn, 339 S.W.3d 84, 87 (Tex. 2011), cert. denied, 132 S. Ct. 455 (2011).  See also HH E. Parcel, LLC v. Handy & Harman, Inc., 287 Conn. 189, 204 n.16 (2008).

[12] The judicial review provisions in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2012), provide that if a party applies to a court for an order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [§§] 10 and 11 of this

Hall St. ruled that "the statutory text gives [the Court] no business to expand the statutory ground." Id. at 589. We are not persuaded that there is any reason to read the corresponding provisions of the MAA differently. See Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 454 Mass. 390, 394 (2009) ("the language of the FAA and the MAA providing for enforcement of arbitration provisions are similar, and we have interpreted the cognate provisions in the same manner").

As the Court in Hall St., 552 U.S. at 586, recognized with respect to the FAA, the legislative intent behind the MAA becomes more clear when the language of its provisions governing judicial review is compared to other provisions in which the Legislature explicitly endorsed the parties' right to contract.

---

title." 9 U.S.C. § 9. The grounds for vacatur are listed in § 10(a) of the FAA, and include the following:

"(1) where the award was procured by corruption, fraud, or undue means;

"(2) where there was evident partiality or corruption in the arbitrators . . . ;

"(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or of any other misbehavior by which the rights of any party have been prejudiced; or

"(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10(a). Compare G. L. c. 251, § 12 (a) (1)-(4), quoted in note 8, supra.

For example, G. L. c. 251, § 3, directs that the parties' contractual provisions for appointing an arbitrator are to be followed in the first instance, and sets up a default method of appointment if a contractually defined method is not available:

> "If the arbitration agreement provides a method of appointment of arbitrators, such method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint an arbitrator."

In contrast, G. L. c. 251, §§ 11 through 13, are not default provisions. Section 11 commands that "the court shall confirm an award" (emphasis added) except in the circumstances described in §§ 12 and 13; the language of the statute leaves no room for parties to contract otherwise.

Our reading of G. L. c. 251, §§ 11 through 13, to mean that a court will review an arbitrator's award to determine only whether one of the statutory grounds for vacating, modifying, or correcting the award has been met accords with this court's interpretation of the MAA since its enactment in 1960. See Beacon Towers Condominium Trust v. Alex, 473 Mass. 472, 474 (2016) ("[A]n arbitration award is subject to a narrow scope of review. . . . We do not review an arbitration award for errors of law or errors of fact" [quotation and citation omitted]); Lynn, 435 Mass. at 62 n.13 ("The Legislature has identified the extremely limited grounds on which courts may vacate or modify

arbitration awards"); Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (Plymouth-Carver) ("Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings'" [citation omitted]); Floors, Inc. v. B.G. Danis of New England, Inc., 380 Mass. 91, 96 (1980) ("[T]he court should not interject itself or its practice into arbitrations unless required to do so by statutory provision or necessity" [citation omitted]); Trustees of the Boston & Me. Corp., 363 Mass. at 390 (judicial review is based on grounds stated in G. L. c. 251, §§ 12 and 13); Grobert File Co. of Am. v. RTC Sys., Inc., 26 Mass. App. Ct. 132, 135 (1998) ("Once in the arena of arbitration, the powers of the arbitrator concerning the issue are wide and the scope of judicial review of the arbitration proceedings is narrow.  Short of fraud, arbitrary conduct, or significant procedural irregularity, the arbitrator's resolution of matters of fact or law is binding. . . .  See also other statutory grounds for vacating an arbitration award contained in G. L. c. 251, § 12" [citations omitted]).  The pertinent language of §§ 11 through 13 of the MAA has not changed since the statute's enactment, and we continue to adhere to our longstanding reading of it.[13]

_____

[13] In concluding here that allowing parties to define

In addition to the language of the MAA, there are strong policy considerations that support limiting the scope of judicial review to the statutorily defined "egregious departures from the parties' agreed-upon arbitration," Hall St., 552 U.S. at 586, that are listed in G. L. c. 251, §§ 12 and 13.  Allowing parties to expand the grounds for judicial review would "undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties" (citation omitted).  Plymouth-Carver, 407 Mass. at 1007.  See Hall St., supra at 588 (purpose of arbitration is to provide efficient alternative to parties seeking finality, not "a prelude to a more cumbersome and time-consuming judicial review process" [citation omitted]).  If parties were able to

---

alternative grounds for standards of judicial review of an award would contravene the express terms of the MAA, we join with the courts that have declined to construe their State arbitration statutes to permit contractual expansion or redefinition of the scope of judicial review by the parties.  See Brookfield Country Club, Inc. v. St. James-Brookfield, LLC, 287 Ga. 408, 413 (2010) ("the [Georgia] Arbitration Code does not permit contracting parties who provide for arbitration of disputes to contractually expand the scope of judicial review that is authorized by statute" [citation omitted]); HL 1, LLC v. Riverwalk, LLC, 15 A.3d 725, 727, 736 (Me. 2011) (grounds for vacating arbitration award enumerated in Maine Uniform Arbitration Act [UAA] are exclusive and do not provide for judicial review of errors of law); John T. Jones Constr. Co. v. City of Grand Forks, 665 N.W.2d 698, 704 (N.D. 2003) ("We agree with the courts that hold [that] parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by [the North Dakota UAA]"); Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp., 320 S.W.3d 252, 260 (Tenn. 2010) (parties cannot expand the scope of judicial review beyond scope of review provided by Tennessee UAA).

redefine by contract language the scope of what a court was to review with respect to every arbitration award, it would spawn potentially complex and lengthy case-within-a-case litigation devoted to determining what the parties intended by the contractual language they chose.  This is fundamentally contrary to the intent and purpose of our arbitration statute.  See Lawrence v. Falzarano, 380 Mass. 18, 28 (1980) ("The purpose of G. L. c. 251 governing arbitration is to provide further speedy resolution of disputes by a method which is not subject to delay and obstruction in the courts" [quotation and citation omitted]).[14]  The policy of limited judicial review preserves arbitration as an expeditious and reliable alternative to litigation for commercial disputes.  See Plymouth-Carver, supra.[15]

---

[14] This case is illustrative of the problem.  Further litigation likely would be necessary to determine the intended meaning of "material, gross and flagrant error by the arbitrator" as it stated in the arbitration clause of the agreement.  The parties' briefs on appeal before us suggest that they do not agree on this point.

[15] Levine argues that if the judicial scope of review agreed to by the parties is rendered invalid, then the entire arbitration clause is unenforceable.  This argument was not raised by Levine in the Superior Court, and was not raised until Levine's reply brief to this court.  An argument raised for the first time in a reply brief is not properly before us, and we do not consider it here.  See Commissioner of Revenue v. Plymouth Home Nat'l Bank, 394 Mass. 66, 67 n.3 (1985).

2. <u>Vacatur under G. L. c. 251, § 12</u>. In recognizing that this court may decide that the scope of judicial review is restricted to the grounds set out in G. L. c. 251, § 12, Levine recasts his challenges to the award to fit within the provisions of G. L. c. 251, § 12 (<u>a</u>) (3) (arbitrators exceeded their authority), or § 12 (<u>a</u>) (1) (award was procured by fraud). The repackaging effort fails.

Levine contends that the arbitrator exceeded his authority in awarding KNS $480,412 in liquidated damages on account of Levine's competing with KNS within three years following Levine's withdrawal;[16] and $1,068,403.70 to compensate for (1) amounts allegedly paid to Levine after his termination from the firm by former firm clients for work that Levine had earlier completed and that had earlier been billed to the clients (accounts receivable); and (2) amounts allegedly paid to Levine after his termination for work that was still in progress at the time Levine left LKNS (work in progress). An arbitrator exceeds his or her authority by granting relief that is beyond the scope of the arbitration agreement, beyond that to which the parties

---

[16] Section 8(a)(iii)(1) of the agreement requires a stockholder who withdraws involuntarily and violates the noncompete provision to pay the firm "14% in the case of Levine and Katz, and . . . 18% in the case of any other Stockholder, of all gross billings from the withdrawn Stockholder's book of business which is lost [by KNS] in the twelve month period following the withdrawal." If the withdrawing stockholder sufficiently demonstrates that some business was not lost by KNS, this amount will be deducted from the amount owed.

bound themselves, or prohibited by law.  Superadio Ltd.
Partnership v. Winstar Radio Prods., LLC, 446 Mass. 330, 334
(2006), quoting Plymouth-Carver, 407 Mass. at 1007.  "If the
arbitrators in assessing damages commit an error of law or fact,
but do not overstep the limits of the issues submitted to them,
a court may not substitute its judgment on the matter."
Lawrence, 380 Mass. at 28-29.  The issues of whether a
stockholder's withdrawal or termination pursuant to section 4(e)
or section 4(f) of the agreement (or both) gives rise to
damages, and if so, what those damages may be, fall squarely
within the broad arbitration clause in the agreement:  "In the
event of any dispute concerning any aspect of this Agreement,
the parties agree to submit the matter to binding arbitration."
Levine asks us to substitute our interpretation of the contract
for that of the arbitrator.[17]  Interpreting the agreement is the
role of the arbitrator, not this court.  See Plymouth-Carver,
407 Mass. at 1007 (reversing Superior Court's judgment vacating
award where question was one of interpretation of agreement);
Greene v. Mari & Sons Flooring Co., 362 Mass. 560, 563 (1972)
("courts have no business overruling [the arbitrator] because

_____

[17] In connection with his challenge to the damages awarded,
Levine again contests the arbitrator's conclusion that a "for
cause" withdrawal under section 4(f) of the agreement is subject
to the noncompete provision.

their interpretation of the contract is different from his" [citation omitted]).

Levine also argues that the portion of the damages award for payments collected from former KNS clients for accounts receivable and work in progress was procured by fraud.  He contends that KNS misrepresented the amounts that were collected by Levine and his new firm, and the arbitrator erroneously relied on conclusory evidence of LKNS's historical rate or percentage of collection on billings for Levine's work to determine damages related to accounts receivable and work in progress while ignoring the evidence that Levine presented.[18]  We agree with the motion judge, who concluded that "the arbitrator's approach was reasonable and more than fair to

---

[18] Each party was asked to submit accounting and data relating to the categories of damages described in the partial final award.  Levine submitted to the arbitrator a brief on damages and attached as an exhibit a spreadsheet (referred to by the parties as "Exhibit D") that purported to list accounts receivable of his new firm, LCMG; Levine argued that the numbers illustrated the amounts his new firm collected from former LKNS clients.  The arbitrator made clear in the final award, however, that Levine "failed to provide the necessary data to more accurately determine the sums due [to KNS] by him for accounts receivable and work in progress."  KNS's position is that the spreadsheet proffered by Levine's counsel is a self-serving document that offers little, and that Levine failed to produce any evidence showing money paid to LCMG or Levine following Levine's withdrawal to determine whether Levine invoiced former firm clients for work performed prior to his departure.  Exhibit D is in the record before us, and although Levine characterizes the numbers as an accurate statement of money received by LCMG on account of work Levine performed while still at LKNS, we can find no evidentiary substantiation of this proposition in the record.

Levine" and the arbitrator was under no obligation to credit Levine's testimony. There is nothing to show that the arbitrator reached his conclusion on the basis of fraud or undue means, "that is, in an underhanded, conniving, or unlawful manner." Superadio Ltd. Partnership, 446 Mass. at 337. Levine presents nothing more than a dispute over a question of fact that is not reviewable by this court.

3. Remaining claims. Levine presents two additional claims: (1) the motion judge erred in dismissing the remaining counts of KNS's complaint -- that is, the counts that followed the first count for confirmation of the arbitration award; and (2) the judge also erred in awarding KNS attorney's fees and costs associated with the dismissed claims.

These claims lack merit. First, the motion judge did not abuse his discretion in dismissing the remaining counts against Levine and his firm. After the parties stipulated to a form of security for any judgment that might enter against Levine, the remaining counts of KNS's complaint -- each of which was aimed at securing any potential judgment confirming the arbitration award -- all became moot, and the judge was warranted in allowing KNS's motion to dismiss them. Second, the judge did not err in awarding attorney's fees and costs in connection with the dismissed claims. The agreement provided that "the cost of enforcing any judgment entered by the arbitrator (including

reasonable attorney's fees) shall be borne by the party against whom such award was made and/or judgment entered."  The claims that supplemented KNS's request to confirm the award were within the purview of enforcing the judgment and sufficiently interconnected to the confirmation of the award.  Fabre v. Walton, 441 Mass. 9, 10 (2004), Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 841 (1st Cir. 1990).

Conclusion.  The judgments of the Superior Court confirming the arbitrator's award and dismissing the additional claims are affirmed, as is the judgment granting attorney's fees and costs. The plaintiffs may apply to this court for attorney's fees and costs in accordance with the procedure set forth in Fabre, 441 Mass. at 10-11.

So ordered.