NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1075

REBECCA M. BROWN & others[1]

vs.

JOHN J. DONOVAN, SR., & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this protracted litigation, the narrow issue currently before us is whether a Superior Court judge erred in confirming an arbitration award that sanctioned the defendant, John J. Donovan, Sr. ("Donovan"), by divesting him of his interest in a trust.  Donovan argues that the arbitrator refused to hear evidence, exceeded his powers, and demonstrated evident partiality, and that the award was procured by fraud.  We affirm.

Background.  In 2003, three of Donovan's children ("the siblings") filed the underlying complaint against him and another sibling, John J. Donovan, Jr. ("John").  Thereafter, the

_____

[1] James H. Donovan, Maureen Donovan Lantz, and Carolyn Donovan Rosenbaum.

[2] The estate of John J. Donovan, Jr.

parties agreed to submit their disputes to an arbitrator, and the same arbitrator has heard the parties' disputes for over a decade. The Superior Court retained jurisdiction over the case for the purpose of enforcing the agreement and related issues. As the arbitrator summarized, the siblings "were always at odds with their father," while John was often in the middle, "sympathetic to the views of his siblings but also supportive of his father and concerned for his welfare." Thus, "John worked with his siblings and his father to resolve disputes and was instrumental in forging an agreement which resulted in the creation of a trust for [Donovan] which John hoped would provide his father with financial security for the remainder of his life."

After John died in 2015, Donovan claimed that a codicil to John's will gave him authority to act on John's behalf. Pursuant to that purported authority, Donovan filed a number of self-benefiting documents with the registry of deeds that, among other things, were designed to deprive John's widow and children of their interests in various assets. Donovan also claimed that John wanted to make a posthumous confession that he and his siblings had committed tax fraud, thereby corroborating allegations made by Donovan that were previously discredited, and that the codicil instructed Donovan to submit paperwork to that effect with the Internal Revenue Service. Upon discovering

2

these filings, the siblings and John's estate submitted a demand for arbitration and contended that Donovan forged the codicil. In an award dated January 25, 2017, the arbitrator concluded that the codicil was "false and fraudulent." The arbitrator contemplated divesting Donovan of his interest in the trust as a sanction for his wrongdoing, did not do so "out of respect for what [the arbitrator] believed John would have wanted," but warned Donovan that there would "be no more second chances." A Superior Court judge confirmed the award, and Donovan did not appeal from that order.

Then, by letter to the arbitrator dated January 19, 2021, Donovan asked for various forms of relief, including entry of an order rescinding all prior orders entered in the arbitration proceedings. The letter reasserted Donovan's tax fraud allegations and suggested that John had legitimate reasons for instructing Donovan to report that fraud to the Internal Revenue Service. The arbitrator received documentary evidence from the parties and agreed to hear Donovan's testimony, after which the arbitrator would decide whether to hear any additional testimony from other parties. After hearing Donovan's testimony, the arbitrator decided not to hear any additional testimony and issued an award dated November 10, 2021, which concluded that Donovan was fraudulently trying to charge his children with tax fraud, and sanctioned Donovan by divesting him of his interest

3

in the trust.  The arbitrator noted his prior reluctance to impose that sanction but concluded that "[e]nough is enough."  A Superior Court judge confirmed the award, which is the subject of this appeal.

Discussion.  "[A]n arbitration award is subject to a narrow scope of review" (citation omitted).  Beacon Towers Condominium Trust v. Alex, 473 Mass. 472, 474 (2016).  We "review an arbitrator's award to determine only whether one of the statutory grounds for vacating, modifying, or correcting the award has been met."  Katz, Nannis & Solomon, P.C. v. Levine, 473 Mass. 784, 793 (2016).  As pertinent here, the statutory grounds for vacatur include that "the arbitrators . . . refused to hear evidence material to the controversy . . . as to prejudice substantially the rights of a party"; "the arbitrators exceeded their powers"; "there was evident partiality by an arbitrator"; and "the award was procured by corruption, fraud or other undue means."  G. L. c. 251, § 12 (a).

Donovan argues that the arbitrator "refused to hear evidence" by not permitting Donovan to present any testimony other than his own.  G. L. c. 251, § 12 (a) (4).  This argument disregards the history of the case and the context of Donovan's requests for relief.  The arbitrator, who had spent over a decade arbitrating disputes between the parties, was exceedingly familiar with the parties and the underlying issues.  Donavan's

4

2021 letter asked the arbitrator to rescind all his prior orders based on Donovan's previously discredited tax fraud allegations. The arbitrator received Donovan's documentary evidence and heard his testimony. After considering that evidence, the arbitrator concluded, based on his extensive experience with the case and prior rejection of the same unsubstantiated allegations, that Donovan had "brought before me another fraudulent application" and there was no need to hear further evidence regarding those allegations. Rather than refusing to hear evidence, the arbitrator exercised his discretion to place reasonable bounds on the scope of the evidence presented. See, e.g., <u>Northland Inv. Corp</u>. v. <u>Goodwin Proctor LLP</u>, 82 Mass. App. Ct. 272, 273-274 (2012).

Donovan also argues that the arbitrator exceeded his powers in divesting Donovan of his interest in the trust. See G. L. c. 251, § 12 (<u>a</u>) (3). However, the parties entered into an agreement that gave the arbitrator "discretion to award any remedy including sanctions, damages, attorney[']s fees . . . for any reason." This language gave the arbitrator broad authority to fashion an appropriate remedy for Donovan's wrongdoing and did not limit the arbitrator to imposing "discrete payments to compensate for specific expenses or wrongs," as Donovan argues.[3]

---

[3] We note that Donovan faced criminal charges for fraud in connection with the codicil. He argues that his tax fraud

5

While Donovan also argues that the broad language, taken to its extreme, permitted the arbitrator to divest Donovan of his interest in the trust "just because he felt like it one day," that is not what occurred here. The arbitrator did not make the decision lightly, gave Donovan warning, and divested Donovan of his interest in the trust only after he repeatedly engaged in unconscionable conduct. Accordingly, the arbitrator did not "grant[] relief beyond the scope of the arbitration agreement, . . . award[] relief beyond that to which the parties bound themselves, or . . . award[] relief prohibited by law," and did not exceed his powers (citations omitted). Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990).

Donovan's remaining arguments, that the arbitrator demonstrated "evident partiality" and that the arbitration award was procured by undue means require little discussion, as Donovan has not established a factual basis for either argument. See G. L. c. 251, § 12 (a) (1), (2). As to evident partiality, Donovan largely points to various strongly worded comments made by the arbitrator that, among other things, found fault with

---

allegations were critical to his defense and that he was impermissibly sanctioned for presenting that defense. This argument fails as a matter of fact; the arbitrator sanctioned Donovan for filing the petition in the arbitration proceedings, not for making the same arguments in his criminal case.

6

Donovan's experts and reproached Donovan for his wrongdoing. The arbitrator made these comments based on his review of the evidence, and they do not suggest that the arbitrator was biased in reviewing that evidence or in deciding the merits of the petition.  As to undue means, Donovan relies on his discredited allegations of tax fraud, but those allegations, even if they had not been discredited, would not establish that the instant award was procured by undue means.[4]

Judgment affirmed.

By the Court (Vuono,

Wolohojian & Toone, JJ.[5]),

Assistant Clerk

Entered:  March 8, 2024.

---

[4] Given our conclusion, we need not address Donovan's argument that the case should be remanded with instructions that a new arbitrator be appointed.
[5] The panelists are listed in order of seniority.