SUPREME JUDICIAL COURT 
 
 MASSACHUSETTS INSURERS INSOLVENCY FUND vs. WORKERS' COMPENSATION TRUST FUND

 
 Docket:
 SJC-13686
 
 
 Dates:
 March 5, 2025 - July 1, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Massachusetts Insurers Insolvency Fund. Workers' Compensation Act, Reimbursement of insurer, Cost of living allowance, Decision of Industrial Accident Reviewing Board. Department of Industrial Accidents. Insurance, Workers' compensation insurance. Administrative Law, Agency's interpretation of statute. Statute, Construction. Words, "Insurer," "Shall," "Right," "All."
 
 

             Appeal from a decision of the Industrial Accident Reviewing Board.  
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            Kurt M. Mullen for the plaintiff.
            Arjun K. Jaikumar, Assistant Attorney General (Douglas S. Martland, Assistant Attorney General, also present) for the defendant.
            Wystan M. Ackerman, for Massachusetts and Rhode Island Insurance Federation, Inc., amicus curiae, submitted a brief.
            KAFKER, J.  The issue presented is whether the Massachusetts Insurers Insolvency Fund (MIIF) is eligible to receive cost-of-living adjustment (COLA) payment reimbursements from the Workers' Compensation Trust Fund (trust fund).  We conclude, for many of the same reasons set out in Arrowood Indem. Co. v. Workers' Compensation Trust Fund, 496 Mass.     (2025) (Arrowood), which we also decide today, that the plain language of the relevant statutes and the funding and reimbursement requirements they contain entitle MIIF to receive COLA-payment reimbursements under G. L. c. 152, § 65.  Accordingly, as in Arrowood, we reverse the decision of the Department of Industrial Accidents (DIA) reviewing board (board).[1]
            1.  Background.  a.  Statutory scheme.  MIIF is a "nonprofit unincorporated legal entity" created by statute.  G. L. c. 175D, § 3.[2]  MIIF was "established in 1970 to provide a limited form of protection from insurer insolvencies" and "minimiz[e] [resulting] financial loss to claimants or policyholders."  Massachusetts Insurers Insolvency Fund v. Berkshire Bank, 475 Mass. 839, 841-842 (2016), quoting Massachusetts Insurers Insolvency Fund v. Smith, 458 Mass. 561, 562 (2010).
            Among other duties, MIIF administers and pays certain "covered claims" filed against an insolvent insurer prior to the insurer's declaration of insolvency or within a limited period after such declaration, subject to other statutory limitations.  See G. L. c. 175D, § 5 (1).  See also G. L. c. 175D, § 1 (2) (defining "covered claim" for purposes of MIIF).  MIIF raises its revenue via mandatory assessments on Massachusetts insurers.  See G. L. c. 175D, § 5 (1) (c).
            i.  Definition of insurer.  MIIF's enabling statute defines an "insurer" as "any person, except as provided in the [medical malpractice act of 1975], who (a) writes any kind of insurance to which this chapter applies, including the exchange of reciprocal or interinsurance contracts, and (b) is licensed to transact insurance in the commonwealth."  G. L. c. 175D, § 1 (5).  Although this definition does not explicitly refer to MIIF as an "insurer," under another statutory provision in force at the time the present dispute arose, MIIF "shall . . . be deemed the insurer to the extent of its obligation on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent" when it takes on an insolvent insurer's covered claims.  G. L. c. 175D, § 5 (1) (b).[3]
            ii.  Reimbursement eligibility.  Under the Massachusetts workers' compensation act (act), insurers are "entitled to quarterly reimbursements" for COLA payments made to injured employees receiving workers' compensation benefits through the insurers' policies.  G. L. c. 152, § 34B (c).  Section 65 enumerates various types of benefits for which an insurer can be reimbursed, including COLA payments:  "There is hereby established a trust fund in the state treasury . . . the proceeds of which shall be used to pay or reimburse the following compensation:  (a) reimbursement of adjustments to weekly compensation pursuant to [§ 34B] . . . ."  G. L. c. 152, § 65 (2), first par.  Section 34B specifies these reimbursements as follows:
"The supplemental benefits under this section shall be paid by the insurer concurrent with the base benefit.  Insurers shall be entitled to quarterly reimbursements for supplemental benefits, pursuant to [§ 65], for cases involving injuries that occurred on or before [October 1, 1986], and for those cases occurring thereafter, to the extent such supplemental benefits are due to the increase of greater than five percent in the average weekly wage in the commonwealth in any single year."
G. L. c. 152, § 34B (c).  As a practical matter, only COLA payments made before December 23, 1991, are eligible for reimbursement.[4]  See G. L. c. 152, § 34B (a), (c); St. 1991, c. 398, § 61.
            Like the act's second-injury reimbursement provisions at issue in Arrowood, the act's COLA-payment reimbursement provisions expressly exclude certain entities that do not participate in the trust fund from reimbursement eligibility.  See G. L. c. 152, §§ 34B (c), 65 (2), first. par.  Specifically, § 34B provides that "[n]o self-insurer, self-insurance group or municipality that has chosen non-participation in the assessment provisions for funding such reimbursements pursuant to [§ 65] shall be entitled to such reimbursements."  G. L. c. 152, § 34B (c).  See G. L. c. 152, § 65 (2), first par. (trust fund will not reimburse "any non-insuring public employer, self-insurer or self-insurance group which has chosen not to participate in the fund").
            b.  Facts.  Between 1989 and 2013, MIIF initiated payment of workers' compensation benefits on behalf of several Massachusetts insurers declared insolvent (insolvent insurers).[5]  The claims handled and paid by MIIF during this period included claims for COLA payments pursuant to G. L. c. 152, § 34B.
            MIIF filed six claims with the trust fund between March 2015 and September 2021, seeking $15,418,924.84 in total reimbursement for § 34B COLA payments made between January 2013 and September 2020.  In August 2016, the trust fund denied MIIF's March 2015 reimbursement claim on two asserted bases:  (1) MIIF is not an "insurer" within the meaning of G. L. c. 152, §§ 34B and 65; and (2) the "statutory purpose" of the reimbursement provisions "is no longer applicable when an insurer becomes insolvent and MIIF commences payment of covered claims."  Specific to the second basis, the trust fund, citing to Home Ins. Co. v. Workers' Compensation Trust Fund, 88 Mass. App. Ct. 189 (2015) (Home), concluded that "[i]nsolvent insurers which are not remitting assessments are not entitled to reimbursements. . . .  MIIF stands in no better position to lay claim to reimbursements of the [t]rust [f]und.  It is not an insurer.  It does not participate in the [t]rust [f]und or remit assessments."
            The trust fund also refused to pay MIIF's subsequent claims for § 34B COLA-payment reimbursements.  MIIF continues to make the statutorily mandated COLA payments to the insolvent insurers' claimants.
            c.  Procedural history.  In 2018, MIIF initiated administrative proceedings with the DIA, filing eighty-nine third-party claims against the trust fund for COLA-payment reimbursements pursuant to G. L. c. 152, §§ 34B and 65 (2) (a).  After holding conferences under G. L. c. 152, § 10A, a DIA administrative judge denied all eighty-nine claims, and MIIF appealed.
            A different DIA administrative judge, to whom the case was transferred, designated one of MIIF's eight-nine claims as a "test case," stayed the remaining eighty-eight claims, and ordered briefing and argument in the test case on two questions of law:
"(1) whether MIIF steps into the shoes of the insolvent insurer under G. L. c. 175D, § 5[,] and therefore qualifies as an 'insurer' for purposes of recovering from the [t]rust [f]und under G. L. c. 152; and . . . (2) whether G. L. c. 152, § 65[,] limits COLA reimbursement to only those parties who collect and transmit assessments to the [t]rust [f]und."
The administrative judge subsequently determined that MIIF was neither an insurer nor entitled to COLA-payment reimbursements and denied MIIF's test case claim.[6]
            MIIF appealed from the administrative judge's denial to the board, which affirmed in August 2023.  Relying largely on the Appeals Court's 2015 decision in Home, the board determined that MIIF's enabling statute does not grant MIIF "more or different rights than those of the insolvent insurer."  Like the insolvent insurer, MIIF "does not collect and transmit assessments to the [trust fund]" and was therefore not entitled to reimbursement under Home.
            The board did not expressly decide whether MIIF was correct in its assertion that it is "deemed the insurer" per G. L. c. 175D, § 5 (1) (b), but it did "not find that language helpful to MIIF's position, as the plain language of § 5 (1) (b) leads to the same result reached by the [administrative] judge."  Thus, "even if MIIF 'were deemed'" the insurer, it would still be barred from reimbursement due to its aforementioned lack of assessment collection and transmission to the trust fund.
            MIIF sought review of the board's decision in the Appeals Court.  We transferred the case on our own motion.
            2.  Discussion.  a.  Standard of review.  "An aggrieved party may seek judicial review of a decision of the board concerning workers' compensation benefits."  Carpenter's Case, 456 Mass. 436, 439 (2010).  If the board's decision is "[b]ased upon an error of law," we may reverse or modify it pursuant to G. L. c. 30A, § 14 (7) (c).  Because the board's interpretations of G. L. c. 175D, § 5, and G. L. c. 152, § 65, are questions of law, our review is de novo.  See Hartnett v. Contributory Retirement Appeal Bd., 494 Mass. 612, 616 (2024); Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 512 (2019).  See also Register of Deeds for Norfolk County v. County Director for Norfolk County, 495 Mass. 350, 354 (2025) ("Questions of statutory interpretation are pure question[s] of law . . . reviewed de novo" [quotation and citation omitted]).
            The board's interpretations are entitled to "substantial deference" (citation omitted).  Mendes's Case, 486 Mass. 139, 143 (2020).  See G. L. c. 30A, § 14 (7) (court "shall give due weight to the experience, technical competence, and specialized knowledge of the agency," as well as its "discretionary authority").  If, however, the board's interpretations of the statutory provisions at issue are incorrect, such interpretations are not entitled to deference.  See Craft Beer Guild, LLC, 481 Mass. at 512.
            We interpret statutes
"according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."
Vita v. New England Baptist Hosp., 494 Mass. 824, 834 (2024), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  In doing so, we construe the statute considering the statutory scheme "as a whole . . . so as to produce an internal consistency within the statute."  Matter of the Estate of Mason, 493 Mass. 148, 152 (2023), quoting Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).  If statutory language is "plain and unambiguous, it is conclusive as to legislative intent."  Garcia v. Executive Office of Hous. & Livable Communities, 495 Mass. 86, 91 (2024), quoting Hartnett, 494 Mass. at 616.
            For the reasons discussed infra, the plain language of G. L. c. 175D, § 5, and G. L. c. 152, § 65, does not support the interpretations put forth by the trust fund relative to MIIF's entitlement to COLA-payment reimbursements in the test case.  Accordingly, we reverse the board's decision denying COLA-payment reimbursements to MIIF.
            b.  MIIF is an insurer for the purposes of the act.  The definition of "insurer" in MIIF's enabling statute does not include or reference MIIF.  See G. L. c. 175D, § 1 (5).  The trust fund relies on this omission to conclude that MIIF cannot be eligible for COLA-payment reimbursements because, as a noninsurer, it is categorically excluded from the act's insurer reimbursement provisions.  If the enabling statute's definition of "insurer" in § 1 (5) was the only statutory source of meaning for that term, the trust fund would be on stronger footing.  But this is not the case, as the statute's subsequent "Powers and duties of Fund" provision, in effect in the relevant period, commanded as follows:  "[MIIF] shall . . . be deemed the insurer to the extent of its obligation on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent" (emphases added).7  G. L. c. 175D, § 5 (1) (b).  MIIF therefore "stands in the shoes" of the insolvent insurer under § 5 (1) (b) and consequently qualifies as an "insurer" eligible for reimbursement under the act.
      The plain meaning of "shall" communicates a mandate.  See Kauders v. Uber Techs., Inc., 486 Mass. 557, 569-570 (2021) ("The use of 'shall' is mandatory"), citing Katz, Nannis & Solomon, P.C. v. Levine, 473 Mass. 784, 791 (2016) ("shall confirm" in statutory provision is "directive" and "carries no hint of flexibility" [citation omitted]).  Here, the Legislature's selection of the term "shall" in § 5 (1) (b) as to "deem[ing]" MIIF an "insurer" when it takes on an insolvent insurer's covered claims is a clear command.  See Kauders, supra; Katz, Nannis & Solomon, P.C., supra.  See also A. Scalia & B.A. Garner, Reading Law:  The Interpretation of Legal Texts 114 (2012) ("When the word shall can reasonably be read as mandatory, it ought to be so read").
            We are further instructed by the statute's plain language insofar as it states that MIIF "shall have all rights, duties and obligations of the insolvent insurer" to the extent of its covered claim obligations (emphasis added).  G. L. c. 175D, § 5 (1) (b).  A "right" is "a legally enforceable claim against another that the other will do or will not do a given act[;] a capacity or privilege the enjoyment of which is secured to a person by law."  Webster's Third New International Dictionary 1955 (1968).  See 480 McClellan LLC v. Assessors of Boston, 495 Mass. 333, 345 (2025), quoting Garcia v. Steele, 492 Mass. 322, 328 n.6 (2023) (dictionaries are "useful aids in determining a word's ordinary meaning" if not defined by statute); Curtatone v. Barstool Sports, Inc., 487 Mass. 655, 658 (2021).  Thus, to the extent an insurer can properly claim reimbursements from the trust fund under the act, so too can MIIF.
            That "rights" is preceded by the descriptor "all" is yet another indication that the Legislature intended for MIIF's rights to be coextensive with that of the insurer prior to its insolvency.  See Garcia, 495 Mass. at 91 (statute's "plain and unambiguous language" is "conclusive as to legislative intent" [citation omitted]).  "All," in common parlance, means, inter alia, "the whole amount or quantity of"; "as much as possible"; "each one of"; and "every."  Webster's Third New International Dictionary 54 (1968).  Accordingly, to exclude MIIF from reimbursement rights under the act would fail to give effect to § 5 (1) (b)'s plain and unambiguous instruction that MIIF "shall have all" of the rights of the insolvent insurer it supplants (emphasis added).  Stated simply, "'[a]ll' means all."  Shaw's Supermkts., Inc. v. Melendez, 488 Mass. 338, 342 (2021).
            The statute therefore plainly provides that MIIF shall have both the rights and obligations of the insolvent insurer.  Ignoring this language, however, the trust fund contends that MIIF assumes only the obligations.  But such an interpretation, under which MIIF stands as an insurer only when such a position is to MIIF's financial detriment, compels an asymmetrical result inconsistent with the plain statutory language.  See G. L. c. 175D, § 5 (1) (b).
            c.  The express eligibility exceptions for COLA-payment reimbursements.  The board's conclusion that MIIF is ineligible for COLA-payment reimbursements also relies on the same interpretive errors of the exceptions from eligibility that we have identified in Arrowood, 496 Mass. at    .  Its reasoning ignores the plain language of the exceptions and the over-all structure of the trust fund, particularly its funding mechanism.  Although, in this case, MIIF is seeking reimbursement for COLA payments pursuant to G. L. c. 152, § 34B, rather than reimbursement for second-injury payments pursuant to G. L. c. 152, § 37, the errors are essentially the same.
            As explained in Arrowood, 496 Mass. at    , G. L. c. 152, § 65, of the act contains three express exceptions to reimbursement eligibility:  "any non-insuring public employer, self-insurer or self-insurance group which has chosen not to participate in the [trust] fund."  G. L. c. 152, § 65 (2), first par.  Like § 37, § 34B closely mirrors this language in enumerating the act's exceptions specific to eligibility for COLA-payment reimbursements:  "No self-insurer, self-insurance group or municipality that has chosen non-participation in the assessment provisions for funding such reimbursements pursuant to [§ 65] shall be entitled to such reimbursements."  G. L. c. 152, § 34B (c).
            Like the insurer in Arrowood, MIIF does not fall into any of these three expressly excepted categories, nor does the plain language of § 65 (2) or § 34B (c) contemplate MIIF or a similarly situated entity in the provisions' reimbursement exceptions.  See G L. c. 152, §§ 34B (c), 65 (2), first par.  See also G. L. c. 152, §§ 25A (2), 25E, tenth par. (respectively defining "self-insurer" and "self-insurance group" for the purposes of the act); 2A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:23 (7th ed. 2021 & Nov. 2024 update) (explaining statutory interpretation maxim expressio unius est exclusio alterius).
            d.  The trust fund's statutory funding mechanism.  Finally, the board's denial of COLA-payment reimbursements to MIIF on the grounds that MIIF does not transmit payments to the trust fund is also incorrect, as it ignores that the trust fund is paid for by employers, not insurers.  Compare G. L. c. 152, § 65 (2), second par. (trust fund revenue "shall be raised by an assessment on all employers subject to this chapter"), with G. L. c. 152, § 65 (5), first par. (insurers "shall bill and collect assessments on insured employers" and "transmit assessments collected").  Accordingly, an insurer, and thus MIIF when it assumes the rights and obligations of an insolvent insurer, is being reimbursed for payments it has already made to injured employees, not for ongoing or past payments made to the trust fund.
            This is essentially the same error we have explicated in greater detail in Arrowood, 496 Mass. at    .  Thus, both Arrowood's reasoning and its validation of the Appeals Court's abrogation of its unduly deferential decision in Home, incorporated by reference here, apply equally in this case.  The board's interpretation of the act's COLA-payment reimbursement provisions is erroneous, and MIIF is not statutorily excluded from receiving such reimbursements from the trust fund.
            3.  Conclusion.  For the above-stated reasons, the board's decision is reversed.  We remand to the board for further proceedings consistent with this opinion.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus brief submitted by Massachusetts and Rhode Island Insurance Federation, Inc., in support of MIIF.
            [2] As discussed in greater detail infra, G. L. c. 175D was recently amended by "An Act to modernize the Massachusetts insurer's insolvency fund," St. 2024, c. 389 (effective Apr. 9, 2025).  Unless otherwise noted, we refer to the preamendment version that applies in this case.
            [3] The current equivalent provision now states:
"[MIIF] shall be deemed the insurer to the extent of its obligation on the covered claims and shall, to that extent subject to the limitations provided in this chapter have all rights, duties and policy obligations of the insolvent member insurer as if the insurer had not become insolvent, including, but not limited to, the right to pursue and retain salvage and subrogation recoverable on covered claim obligations to the extent paid by [MIIF]; provided, however, that [MIIF] shall not be deemed the insolvent member insurer for the purpose of conferring jurisdiction or for any reason not expressly stated in this chapter.  The extent of [MIIF]'s subrogation rights and any other rights of reimbursement with respect to its covered claims payments shall not be limited as if [MIIF] were the insolvent member insurer but shall be determined independently by taking into account [MIIF]'s rights under [§] 11."  (Emphases added.)
G. L. c. 175D, § 5 (b), as amended through St. 2024, c. 389, § 3 (effective Apr. 9, 2025).  The trust fund cites repeatedly to this amended version in its brief and argues, inter alia, that the amendment "did not include in those 'rights, duties, and policy obligations' the right to COLA reimbursement or any other reimbursement under [G. L. c. 152]" but did specify that MIIF's rights "shall be determined independently by taking into account [MIIF]'s rights under [§] 11," which does not reference "workers' compensation insurance, [G. L. c. 152], or any reimbursement thereunder."  In response, MIIF asserts that the "shall not be limited" language "reflects that MIIF will have an insolvent insurer's rights to subrogation and any other rights of reimbursement, plus any additional reimbursement rights given to MIIF under [§] 11."  We need not address or decide this issue, as the preamendment statute is the one applicable in the instant case.
            [4] As stated in the statutory text, for compensable injuries occurring after 1986, G. L. c. 152, § 34B (c), provides for COLA payment reimbursement only "to the extent such supplemental benefits are due to the increase of greater than five percent in the average weekly wage in the commonwealth in any single year" (emphasis added).  In 1991, the Legislature amended § 34B (a), limiting the average weekly wage increase to the "lesser" of "the percentage change in the most recent annual consumer price index calculated by the Bureau of Labor Statistics of the United States Department of Labor for the northeast region for all urban consumers" or "five percent" (emphases added).  G. L. c. 152, § 34B (a), as amended through St. 1991, c. 398, § 61.  Taken together, § 34B (a) and (c) effectively limit reimbursement eligibility to COLA payments made in connection with compensable injuries occurring before the § 34B (a) amendment's effective date in December 1991.
            [5] The insolvent insurers and the effective dates of their liquidations are as follows:  American Mutual Liability Insurance Company and American Mutual Insurance Company of Boston, March 9, 1989; American Universal Insurance Company, January 8, 1991; Western Employers Insurance Company, April 19, 1991; United Community Insurance Company, July 7, 1994; Reliance Insurance Company, October 3, 2001; Home Insurance Company, June 13, 2003; Shelby Insurance Company and Shelby Casualty Insurance Company, August 1, 2006; Centennial Insurance Company, September 14, 2010; and Lumbermens Mutual Casualty Company, American Manufacturers Mutual Insurance Company, and American Motorists Insurance Company, May 10, 2013.
            [6] Per the administrative judge's order bifurcating the proceedings and designating a test case, dated November 3, 2022, "[a]ll rulings in the test case with respect to these issues will apply to MIIF's other claims for reimbursement for COLA payments that MIIF has made to individual employees."
            [7] As stated in notes 2 and 3, supra, our analysis is limited to the version of G. L. c. 175D, § 5 (1) (b), in effect at the time this dispute arose, rather than the amended version that took effect in 2025.  See St. 2024, c. 389, § 3.