NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12487

  BUFFALO-WATER 1, LLC  vs.  FIDELITY REAL ESTATE COMPANY, LLC.


        Suffolk.     October 4, 2018. - November 26, 2018.

    Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
                        Kafker, JJ.


Appraisal.  Declaratory Relief.  Practice, Civil, Declaratory
    proceeding, Motion to dismiss.  Contract, Implied covenant
    of good faith and fair dealing.



    Civil action commenced in the Superior Court Department on
May 23, 2017.

    A motion to dismiss was heard by Janet L. Sanders, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Richard E. Briansky for the plaintiff.
    David J. Apfel for the defendant.
    Timothy P. Burke & Nathaniel P. Bruhn, for Greater Boston
Real Estate Board, amicus curiae, submitted a brief.
    Dawn Mertineit & Katherine E. Perrelli, for Appraisal
Institute & another, amici curiae, submitted a brief.


    GANTS, C.J.  In Eliot v. Coulter, 322 Mass. 86, 91 (1947),

this court held that, where parties agree that the fair value of

a property shall be determined by an appraiser, "the correctness of the principles and methods of valuation adopted by [an] appraiser[] cannot be inquired into by the courts, in the absence of fraud, corruption, dishonesty or bad faith." Under this common-law rule, a judge may not invalidate "the determination of appraisers selected by agreement to resolve a dispute" unless the appraisal process or decision was tainted on one of these four grounds. Nelson v. Maiorana, 395 Mass. 87, 89 (1985). The issue on appeal is whether we should modify this common-law rule and allow a judge to invalidate an appraisal intended by the parties to provide a final, binding valuation of a property where there is the appearance of bias, not on the part of the individual who conducted the appraisal, but on the part of the entity that employed the individual appraiser. We conclude that the common-law rule established in Eliot properly balances the need for fair valuations with the need for finality in the appraisal process, and that an appearance of bias alone is insufficient to invalidate an appraisal. Because the allegations in the complaint, if proved, do not warrant a finding of any violation of the agreements setting forth the terms of the appraisal, or a finding of fraud, corruption, dishonesty, or bad faith by the individual appraiser, or a finding of breach of the implied covenant of good faith and fair

dealing by the defendant, we affirm the Superior Court judge's order allowing the defendant's motion to dismiss.[1]

Background. When reviewing a motion to dismiss, we accept as true all facts alleged in the plaintiff's verified complaint and accompanying exhibits. See Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 595 (2017). The following facts are drawn from that complaint and those documents.

In October 2004, the defendant, Fidelity Real Estate Company, LLC (Fidelity), sold the Winthrop Building, a commercial property located in Boston (property), to the plaintiff, Buffalo-Water 1, LLC (Buffalo-Water), a subsidiary of a national real estate company. Buffalo-Water then leased the property back to Fidelity, and the parties entered into an option to purchase agreement (option agreement) granting Fidelity the option to buy the building back in the final year of its lease. The option agreement stated that, if Fidelity chose to exercise its option, the purchase price would be $16,275,000 or ninety-five percent of the property's fair market value, whichever is greater. The fair market value would be determined by agreement of the parties, or by the following appraisal process outlined in the option agreement: (1) each

---

[1] We acknowledge the amicus briefs submitted by the Appraisal Institute and Massachusetts Board of Real Estate Appraisers, and by the Greater Boston Real Estate Board.

party appoints an appraiser who has at least ten years of experience appraising Greater Boston property and is an MAI-designated member of the Appraisal Institute[2] or a member of the American Society of Real Estate Counselors[3] (or their successor organizations); (2) if the two appointed appraisers cannot agree on the fair market value but their appraisals fall within five percent of one another, the fair market value shall be deemed to be the average of the two appraisals; (3) if the difference between the appraisals is greater than five percent, the two appraisers shall appoint a third appraiser to decide the fair market value.  The option agreement provides that this final valuation may not be greater than the higher or less than the lower of the two previous appraisals.

In August 2016, Fidelity exercised its right under the option agreement to purchase the property.  Fidelity and

---

[2] The Appraisal Institute, a professional association of real estate appraisers, designates certain qualified professionals as MAI-designated members.  "MAI" is not technically an acronym, but one of several designations used to identify certain professionals as members of the Appraisal Institute.  To become an MAI-designated member, an appraiser must have good moral character, receive credit for specialized experience, pass an examination, and meet various other requirements.

[3] The Counselors of Real Estate is an international organization of property professionals.  It was formerly known as the American Society of Real Estate Counselors.  An individual may become a member by invitation, or may apply for membership after meeting certain experience requirements.

Buffalo-Water were unable to agree upon the property's fair market value, and each retained an independent appraiser to determine the appropriate purchase price. Buffalo-Water's appraiser valued the property at $36 million; Fidelity's appraiser valued it at $17 million.[4] Because the two appraisals differed by more than five percent, the parties agreed to retain Cushman & Wakefield (Cushman), a real estate services company, as a third appraiser.

Cushman outlined the terms of its appraisal services in a letter of engagement (engagement agreement) signed by the parties and by Robert Skinner, the Cushman professional selected to perform the independent appraisal.[5] On April 18, 2017, Skinner submitted an appraisal valuing the property at $22.9 million. The valuation was accompanied by a "Certification of Appraisal" signed by Skinner, which stated, "We have no present or prospective interest in the property that is the subject of this report, . . . no personal interest with respect to the

_____

[4] According to the complaint, Buffalo-Water's appraiser evaluated the fair market value of the property as occupied, but Fidelity's appraiser evaluated it as vacant. Because neither party disputes the validity of these two initial appraisals, we do not address this discrepancy here.

[5] Robert Skinner may have had assistance in valuing the property -- the engagement agreement retaining Cushman to conduct the valuation lists a $475 hourly fee for Skinner, and a $250 hourly fee for "Analysts/Appraisers." Skinner alone, however, signed the engagement agreement and the certification of appraisal attached to the final appraisal report.

parties involved," and "no bias with respect to the property that is the subject of this report or to the parties involved with this assignment."

Soon after receiving the valuation, Buffalo-Water asked Skinner to reconsider the appraisal in light of certain "factual errors."[6]  In response, Cushman offered to meet with Buffalo-Water and Fidelity to discuss the appraisal.  Fidelity declined this offer to meet in a letter that noted that neither the option agreement nor the engagement agreement "contemplates reconsideration of the appraisal at any time."  Fidelity also stated that Buffalo-Water was obliged under the option agreement to honor the third appraiser's valuation and deed the property to Fidelity.

After receiving Fidelity's letter, Buffalo-Water learned that in December 2016, before Cushman was engaged to conduct the appraisal, Fidelity had retained Cushman for a national representation contract.[7]  Buffalo-Water communicated this

---

[6] In an electronic mail message sent on April 21, 2017, Stephen Scalione -- Buffalo-Water's executive director of finance -- summarized the alleged factual errors.  Scalione claimed that Skinner had misreported the purchase price and net rentable area of the property, that a certain deduction was improper, that the building should not have been valued as vacant, and that the over-all valuation was inaccurate.

[7] Fidelity asserts that the national representation contract was with Cushman & Wakefield U.S., Inc., not Cushman & Wakefield of Massachusetts, Inc., which employed the appraiser who performed the valuation.  Because the complaint identifies only

information to Fidelity, claiming that Fidelity's preexisting relationship with Cushman created an impermissible conflict of interest. Fidelity declined to retain a new appraiser or to extend the closing date in light of this alleged conflict.

The following week, Buffalo-Water filed a two-count verified complaint against Fidelity in the Superior Court. The first count seeks a judgment declaring that the appraisal is invalid and nonbinding; the second count alleges a breach of the covenant of good faith and fair dealing. Fidelity moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The judge allowed Fidelity's motion and dismissed the complaint, concluding that the facts alleged by Buffalo-Water did "not amount to the kind of bad faith, fraud or corruption required for a court to invalidate an independent appraisal agreed to by the parties." Buffalo-Water appealed, and we transferred the case to this court on our own motion.

Discussion. We review the allowance of a motion to dismiss de novo. Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 164 (2014). In considering whether a count in a complaint survives a motion to dismiss under Mass. R. Civ. P. 12 (b) (6), we accept as true the factual allegations in the

one Cushman entity, and because our decision does not rest on the distinction, we refer to Cushman as a single entity.

complaint and the attached exhibits, draw all reasonable inferences in the plaintiff's favor, and determine whether the allegations "plausibly suggest" that the plaintiff is entitled to relief on that legal claim (citation omitted).  Id.  The allegations must be more than "mere labels and conclusions," and must "raise a right to relief above the speculative level" (quotations and citations omitted).  Id. at 165.

Buffalo-Water raises three arguments on appeal.  First, it claims that the judge improperly dismissed its claim for declaratory judgment under rule 12 (b) (6) because courts are obligated to declare the rights of the parties in every properly brought action for declaratory relief.  Second, it claims that the appraisal should be invalidated due to Cushman's failure to disclose its preexisting contractual relationship with Fidelity.  Third, Buffalo-Water claims that Fidelity committed a breach of the covenant of good faith and fair dealing by taking advantage of an appraisal process it knew to be biased.  We address each of these arguments in turn.

1.  Declaratory relief.  Buffalo-Water contends that the judge erred in dismissing its claim for declaratory relief under G. L. c. 231A, § 1, because, where the claim was properly brought, Buffalo-Water is entitled to a declaration of the rights of the parties.  We hold that, where a party moves to dismiss a properly brought declaratory judgment claim under rule

12 (b) (6) and where the judge concludes that the facts alleged in the complaint fail to state a claim upon which relief can be granted, the judge has the option of dismissing the claim or of declaring that, based on the facts alleged in the complaint, the plaintiff is not entitled to the declaratory relief sought.

When evaluating a motion to dismiss a claim for declaratory relief under rule 12 (b) (6), a judge must proceed in two steps. First, the judge must determine whether the claim was "properly brought."  See Mscisz v. Kashner Davidson Sec. Corp., 446 Mass. 1008, 1010 (2006).  A claim for declaratory relief is "properly brought" where the plaintiff demonstrates that an actual controversy exists, see G. L. c. 231A, § 1 (courts may issue declaratory judgments where "an actual controversy has arisen and is specifically set forth in the pleadings"); that the plaintiff has legal standing to sue, see Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292-293 (1977) (explaining standing requirement); and that all necessary parties have been joined, see G. L. c. 231A, § 8 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration . . ."); Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 338 (2014) (failure to join necessary parties under G. L. c. 231A, § 8, and Mass. R. Civ. P. 19, 365 Mass. 765 [1974] "may be

jurisdictional in a declaratory judgment action, thereby precluding the court's consideration of the issue").[8]

Where the claim is "properly brought," as it is here, the judge must proceed to the second step:  determining whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss.

Buffalo-Water contends that, even if the facts alleged in its complaint fail to state a claim for declaratory relief, the judge may not dismiss its properly brought claim but must instead declare the rights of the parties.  Buffalo-Water's contention has considerable support in our case law.  See Lynn v. Lynn Police Ass'n, 455 Mass. 590, 599 (2010) ("In a properly brought action for declaratory relief, there must be a declaration of the rights of the parties even though relief is denied to a plaintiff"); Cherkes v. Westport, 393 Mass. 9, 12 (1984) (same); Attorney Gen. v. Kenco Optics, Inc., 369 Mass. 412, 418 (1976) ("When an action for declaratory relief is properly brought and relief is denied on the merits, the action should not be dismissed. . . .  The rights of the parties should

_____

[8] Where the relief sought through a declaratory judgment claim involves administrative action, we further require the plaintiff to show that all available administrative remedies have been exhausted.  See Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 106 (1991).

be declared" [citation omitted]); Jewel Cos. v. Burlington, 365 Mass. 274, 277 (1974) ("a demurrer will not be sustained . . . merely because the court is convinced the plaintiff will fail on the merits but only where the bill on its face fails to state a controversy proper for determination under the declaratory procedure" [quotation and citation omitted]); Connery v. Commissioner of Correction, 33 Mass. App. Ct. 253, 254 n.4 (1992), S.C., 414 Mass. 1009 (1993) ("Irrespective of the merits of the case, dismissal of the case under Mass. R. Civ. P. 12 [b] [6] was not a correct disposition" because "[i]n an action for declaratory relief . . . the court ought to declare the rights of the parties").  But Massachusetts appellate courts have also affirmed orders allowing motions to dismiss in properly brought claims for declaratory relief.  See State Room, Inc. v. MA-60 State Assocs., L.L.C., 84 Mass. App. Ct. 244, 252 (2013) (affirming judgment dismissing claim for declaratory relief under rule 12 [b] [6]).  See also Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745 (2006); Wallerstein v. Board of Bar Examiners, 414 Mass. 1008 (1993).[9]

_____

[9] In Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 748 n.5 (2006), and Wallerstein v. Board of Bar Examiners, 414 Mass. 1008, 1009 (1993), this court acknowledged that when "an action for declaratory relief is properly brought and relief is denied on the merits, the action should not be dismissed" (citation omitted) and the rights of the parties should be declared.  In both cases, however, the court went on to affirm judgments granting motions to dismiss,

Our case law regarding whether courts may dismiss properly brought claims for declaratory relief under rule 12 (b) (6) therefore requires clarification.

Where a defendant has filed a motion to dismiss and the judge concludes that the plaintiff has failed to state a claim upon which relief can be granted, the claim is ripe for disposition. If the plaintiff is not entitled to the declaratory judgment sought even if all of the factual allegations in the complaint are true, there can be no justification for allowing the claim to proceed or for permitting further discovery. If the judge were to declare the rights of the parties, the declaration should simply be that the plaintiff is not entitled to the declaratory relief sought based

on the ground that dismissal of a complaint under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), is not a decision on the merits. See Harvard Crimson, Inc., supra; Wallerstein, supra. At least for res judicata purposes, however, a dismissal under Mass. R. Civ. P. 12 (b) (6) is considered an adjudication on the merits. See Mass. R. Civ. P. 41 (b) (3), as amended, 454 Mass. 1403 (2009) ("any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party . . . operates as an adjudication upon the merits"); Mestek, Inc. v. United Pac. Ins. Co., 40 Mass. App. Ct. 729, 731 (1996) ("under Massachusetts law, as elsewhere, a dismissal for failure to state a claim . . . operates as a dismissal on the merits" [citation and alteration omitted]). See also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) (dismissal for failure to state claim under Fed. R. Civ. P. 12 [b] [6], which is identical to Mass. R. Civ. P. 12 [b] [6], is judgment on merits). We therefore find the reasoning in support of the dismissals in the Harvard Crimson, Inc. and Wallerstein cases to be unpersuasive.

on the allegations in the complaint. Such a declaration, however, is implicit in a judge's order to dismiss a declaratory judgment claim under rule 12 (b) (6). Here, for instance, the judge's allowance of the motion to dismiss implicitly declares that, based on the allegations in its complaint, Buffalo-Water is not entitled to the declaration that Skinner's appraisal is invalid. Therefore, we see no convincing reason to prohibit a judge from dismissing a properly brought declaratory judgment count where it fails to state a claim under rule 12 (b) (6). We also see no convincing reason to prohibit a judge from making explicit through a declaration of rights what would be implicit in a dismissal. To the extent that previous cases have held that a judge may not dismiss a properly brought declaratory judgment claim where it fails to state a claim under rule 12 (b) (6), those cases are overruled.

2. Validity of appraisal. Parties that agree to be bound by an appraisal are free to set forth contractual terms regarding the appraiser's obligations and the grounds for invalidating the appraisal. Therefore, in deciding whether to invalidate an appraisal, we look first to determine whether there are allegations that would support a finding of a material breach of the contract terms governing the appraisal. Where there is no such material breach, we then look to the common law

to determine whether the appraisal is invalid due to "fraud, corruption, dishonesty or bad faith." Eliot, 322 Mass. at 91.

a. Contract terms. Because the engagement agreement retaining Cushman to perform an appraisal for Buffalo-Water and Fidelity sets forth the terms of the appraisal at issue here, we look to its contents to determine whether the appraiser was contractually obligated to disclose Cushman's contract with Fidelity. Three provisions of the engagement agreement are relevant: the discussion of conflicts of interest, the requirement that the appraiser's prior services be disclosed, and the commitment to "develop an appraisal in accordance with [the Uniform Standards of Professional Appraisal Practice (USPAP)[10]] and the Code of Ethics and Certification Standards of the Appraisal Institute."

i. Conflicts of interest. The "Conflicts of Interest" section of the engagement agreement states that "[Cushman] adheres to a strict internal conflict of interest policy. If we discover in the preparation of our appraisal a conflict with this assignment we reserve the right to withdraw from the assignment without penalty." This provision does not obligate Cushman or its appraisers to disclose any conflicts or

---

[10] The Uniform Standards of Professional Appraisal Practice (USPAP) are published by the Appraisal Foundation, which sets standards and qualifications for real estate appraisers.

relationships. Instead, it exists to protect Cushman should it choose to withdraw from an assignment to perform an appraisal because of a conflict of interest. The provision is therefore not applicable where, as here, the appraiser completed a valuation without exercising the right to withdraw.

ii. Disclosure requirement. In a section entitled "Prior Services Disclosure," the engagement agreement states that the "USPAP requires disclosure of prior services performed by the individual appraiser within the three years prior to this assignment." The section goes on to affirm that the "undersigned appraiser has not provided prior services within the designated time frame." The relevant USPAP section is an "Ethics Rule" explaining that "[i]f known prior to accepting an assignment, and/or if discovered at any time during the assignment, an appraiser must disclose to the client . . . any current or prospective interest in the subject property or parties involved; and any services regarding the subject property performed by the appraiser within the three year period immediately preceding acceptance of the assignment, as an appraiser or in any other capacity." Appraisal Foundation, USPAP 9 (2016-2017) (USPAP).

The relevant appraiser for the purposes of the contract is Skinner, who signed the engagement agreement and went on to perform the valuation at issue. Buffalo-Water's argument --

that Cushman is the relevant appraiser -- is belied not only by the text of the engagement agreement, which clearly refers to the "individual" and "undersigned" appraiser, but also by an Ethics Rule comment clarifying that the Ethics Rule "specifies the personal obligations and responsibilities of the individual appraiser."  Id. at 8.  This is consistent with the "Assumptions and Limiting Conditions" section of Skinner's completed appraisal report, which explicitly defines "[a]ppraiser(s)" to mean "the employee(s) of [Cushman] who prepared and signed the Report" (emphasis added).  Buffalo-Water's focus on Skinner's employer is further refuted by the answer to one of the "Frequently Asked Questions" that provide guidance regarding the interpretation of the USPAP.  The relevant question asks, "If the firm that employs me as an appraiser has provided leasing or property management services in the past three years for the subject property, must this be disclosed?"  Id. at 219.  The Appraisal Foundation responds, "[n]ot necessarily," as the Ethics Rule only "requires disclosure of services provided by the appraiser.  However, if an appraiser believes that the provision of a service by the appraiser's firm or other related entity may be relevant, he or she should disclose that information to a potential client" (quotation omitted).[11]  Id.

---

[11] We note that there is no allegation in the complaint that Cushman provided any services for the Winthrop Building.

Buffalo-Water's complaint alleges no facts suggesting that Skinner had any interest in the Winthrop Building or that he had performed an appraisal of the Winthrop Building in the three years prior to his acceptance of the assignment (or at any other time).  Nor does the complaint allege that Skinner even knew of Fidelity's national representation contract with Cushman.  Without such knowledge, Skinner cannot be expected to have disclosed that information to Buffalo-Water.  Nor, for that matter, could he have been influenced in his valuation of the property by a Cushman contract with Fidelity that he is not alleged to have known anything about.  The "Prior Services Disclosure" section of the engagement agreement therefore did not require the disclosure of Cushman's contract with Fidelity.

iii.  <u>Incorporation of USPAP and Code of Ethics</u>.  In an engagement agreement section entitled "USPAP Compliance," Skinner agreed to "develop an appraisal in accordance with USPAP and the Code of Ethics and Certification Standards of the Appraisal Institute."  Here, the relevant incorporated standard is rule 3-6 of the Code of Ethics, which provides that in the absence of disclosure, "[i]t is unethical to provide a Service if a valuer has any direct or indirect, current, or prospective personal interest in the subject or outcome of the Service or with respect to the parties involved in the Service."

The Code of Ethics specifically defines a "valuer" as "[o]ne who is expected to provide Services in an unbiased and competent manner" (emphasis added). Appraisal Institute, Code of Professional Ethics and Explanatory Comments 6 (2015). In this case, where Skinner was the "valuer," the relevant inquiry is whether Skinner's actions violated rule 3-6 of the Code of Ethics. The complaint alleges no facts tending to show that Skinner had any personal interest in the Winthrop Building or in the outcome of his valuation, or knew of the national representation contract between Fidelity and Cushman. Code of Ethics rule 3-6, as incorporated by the engagement agreement, therefore created no obligation to disclose the existence of that contract.

b. Common law. Finding no contractual breach, we move on to consider whether the appraisal was invalid under Massachusetts common law. Our common law has recognized that, when parties enter into a contract providing that the valuation established by an independent appraiser shall determine the value of a property or business, they express their "shared desire for finality" through a means other than adjudication by a court or an arbitrator. State Room, Inc., 84 Mass. App. Ct. at 249. See Eliot, 322 Mass. at 89 (parties agreed to valuation "that would in the future prevent a resort to the courts or to technical arbitration"). The common law also recognizes that

the need for finality does not override the need for the appraisal process to be untainted by "fraud, corruption, dishonesty or bad faith." See Eliot, supra at 91. By allowing courts to invalidate appraisals only in these narrow circumstances, the common-law test established in Eliot balances the desire for finality with the need for integrity in the appraisal process.

Buffalo-Water claims that the appearance of bias arising from Cushman's national representation contract with Fidelity suffices to invalidate Skinner's appraisal. In evaluating this claim, we first consider whether the appearance of bias falls within the existing rubric of "fraud, corruption, dishonesty or bad faith." Because we find that it does not, we then consider whether we should revise our common law to include it.

We begin by noting that, in determining whether to invalidate an appraisal, we look to the conduct of the individual appraiser or appraisers responsible for the valuation, not to the conduct of their employer. This rule is in keeping with the USPAP and the Code of Ethics. See USPAP, supra at 1 (defining "appraiser" as "one who is expected to perform valuation services competently and in a manner that is independent, impartial, and objective" [emphasis added]); id. at 8 ("This [Ethics] Rule specifies the personal obligations and responsibilities of the individual appraiser"); Appraisal

Institute, Code of Professional Ethics and Explanatory Comments 6 (2015) (defining "valuer" as "[o]ne who is expected to provide Services in an unbiased and competent manner" [emphasis added]).

In arguing for the adoption of an "appearance of bias" standard, Buffalo-Water relies in large part on the statement in the United States Supreme Court's opinion in Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 150 (1968) that, under the Federal Arbitration Act, "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." Putting aside that this decision involved an arbitration rather than an appraisal and that it interpreted a Federal arbitration statute, the appearance of bias in Commonwealth Coatings Corp. arose from the fact that the "third arbitrator, the supposedly neutral member of the panel, conducted a large business . . . in which he served as an engineering consultant" and one of the "regular customers" of that business was a litigant in the arbitration. Id. at 146. Thus, "the appearance of bias" arose from his personal, "repeated and significant" business relationship with the defendant, not simply the business relationship of his employer.[12] Id. Even the cases from other jurisdictions that

---

[12] We note that the two concurring Justices sought to limit the breadth of the holding, stating that "it is enough for present purposes to hold, as the Court does, that where the arbitrator has a substantial interest in a firm which has done

were cited by Buffalo-Water in its discussion of appraiser bias focus on the bias of individual appraisers, not their employer. See, e.g., Gebers v. State Farm Gen. Ins. Co., 38 Cal. App. 4th 1648, 1652 (1995) (appraiser was separately retained by party as expert witness in two pending court cases); Central Life Ins. Co. v. Aetna Cas. & Sur. Co., 466 N.W.2d 257, 261 (Iowa 1991) ("appraiser was interested because he had a direct financial interest in the dispute").

Buffalo-Water alleges that there is an appearance of bias in Skinner's appraisal because of a business relationship that his employer, Cushman, has with Fidelity. Skinner is not alleged to have known about this business relationship when he made the valuation. The alleged appearance of bias does not qualify as "fraud, corruption, dishonesty or bad faith." Eliot, 322 Mass. at 91.

At a minimum, a claim of fraud sufficient to invalidate an appraisal must allege a misrepresentation, and there are no allegations in the complaint tending to show that Skinner made, or was even aware of, a false representation to Buffalo-Water. See Balles v. Babcock Power Inc., 476 Mass. 565, 573 (2017) (describing elements of fraud). To the extent that Buffalo-

---

more than trivial business with a party, that fact must be disclosed." Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 151-152 (1968) (White, J., concurring, joined by Marshall, J.).

Water alleges that Cushman committed fraud by omission because Buffalo-Water relied to its detriment upon a "material omission by Cushman (i.e. its failure to disclose its relationship with Fidelity)," this allegation also fails.  To show fraud by omission, the plaintiff must allege "both concealment of material information and a duty requiring disclosure."  Sahin v. Sahin, 435 Mass. 396, 402 n.9 (2001).  Here, Buffalo-Water has not shown that Skinner concealed (or even knew of) the national contract between Fidelity and Cushman, nor has it shown any duty to disclose that contract.[13]

"Dishonesty" is a broader term than fraud, encompassing all "behavior that deceives or cheats people," "untruthfulness," and "untrustworthiness."  Black's Law Dictionary 568 (10th ed. 2014).  We need not decide here whether a dishonest act that falls short of fraud will suffice under our common law to invalidate an appraisal, because an appearance of bias alone cannot reasonably be deemed an act of dishonesty where, as here, the appearance of bias arises from a business relationship of Cushman that Skinner is not alleged to have known existed.

A finding of "corruption" might be warranted where the individual appraiser had an undisclosed personal interest --

---

[13] In view of this conclusion, we need not decide whether a complaint seeking to invalidate an appraisal on the ground of fraud must plead the allegation of fraud with "particularity." See Mass. R. Civ. P. 9 (b), 365 Mass. 751 (1974).

financial or otherwise -- in the outcome of his or her valuation.  As earlier noted, rule 3-6 of the Code of Ethics provides that it is unethical to provide services without disclosure if the valuer has any "personal interest" in the subject or outcome of the service or "with respect to the parties involved."  But we decline to characterize as "corruption" the mere appearance of bias based on a business relationship of the appraisal company rather than of the individual appraiser, especially where there is no allegation that the individual appraiser knew of that relationship.

Bad faith is a "general and somewhat indefinite term" that goes beyond "bad judgment" or "negligence," suggesting "a dishonest purpose or some moral obliquity," a "conscious doing of wrong," or a "breach of a known duty through some motive of interest or ill will."  Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416 (1937).  See Commonwealth v. Frith, 458 Mass. 434, 441 (2010).  Bad faith is not a statutory ground for invalidating arbitrations under the Massachusetts Uniform Arbitration Act for Commercial Disputes, G. L. c. 251, § 12 (a) (MAA), but the MAA does require courts to vacate arbitration awards where "there was evident partiality by an arbitrator appointed as a neutral."  G. L. c. 251, § 12 (a) (2). "[E]vident partiality means a situation in which a reasonable person would have to conclude that an arbitrator was partial to

one party to an arbitration" (quotation and citation omitted). JCI Communications, Inc. v. Int'l Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003). We recognize that partiality, where it exists, is more likely to be evident in an arbitration than in an appraisal because an arbitrator generally conducts a hearing where evidence is offered, while an appraiser generally renders a valuation without a hearing or the presentation of evidence. See Palmer v. Clark, 106 Mass. 373, 389 (1871) (appraisal decision, unlike arbitration decision, "may be made without notice to or hearing of the parties"). But if evident partiality were proved in the context of an appraisal, it would be sufficient to establish bad faith and to invalidate an appraisal under our common law, much as it would invalidate an arbitration award under the MAA. Evident partiality, however, means "more than just the appearance of possible bias," JCI Communications, Inc., supra, and therefore cannot be established based on the allegations in Buffalo-Water's complaint.

Arguably, an appraiser may also act in "bad faith" where he or she acts in any other way that would justify vacating an arbitration award under the MAA. See, e.g., G. L. c. 251, § 12 (a) (1) (arbitration award shall be vacated if procured by undue means); G. L. c. 251, § 12 (a) (2) (arbitration award shall be vacated if there was "misconduct prejudicing the rights

of any party").  Buffalo-Water, however, has alleged no facts showing that Skinner's actions, if committed in an arbitral context, might have been impermissible under the MAA.  We therefore need not address here to what extent "bad faith" under our common law might encompass the various grounds for invalidating an arbitration award under the MAA.

Having determined that the appearance of bias alone does not support a finding of "fraud, corruption, dishonesty or bad faith," Eliot, 322 Mass. at 91, we consider whether to add "appearance of bias" as a separate common-law ground for invalidating an appraisal.  We decline to do so.  For more than seventy years, the common-law standard established in Eliot has provided an appropriate balance between parties' desire for finality and the need for integrity in the appraisal process.  Allowing appraisals to be invalidated based on the appearance of bias alone would considerably diminish the finality of appraisals without significantly improving their over-all integrity.  Cf. Katz, Nannis & Solomon, P.C. v. Levine, 473 Mass. 784, 794 (2016) ("[a]llowing parties to expand the grounds for judicial review would undermine the predictability, certainty, and effectiveness of the arbitral forum that has been voluntarily chosen by the parties" [quotation and citation omitted]).

When parties negotiate a contract that provides for a binding appraisal, they are free to include provisions that establish more stringent impartiality requirements than those in our common law and specify that the appraisal will be invalid where those requirements are not met. Here, just as the parties required that the individual appraisers have at least ten years of experience valuing Greater Boston property, they could have required disclosure of any information concerning Cushman's business dealings with Buffalo-Water or Fidelity that might create an "appearance of bias," and agreed to invalidate the appraisal if such a disclosure was not made. Where they did not, we decline to expand our common law to require invalidation on this ground alone.

Because the allegations in Buffalo-Water's verified complaint, taken as true, do not "plausibly suggest" that the appraisal was tainted by fraud, corruption, dishonesty, or bad faith, and because the appearance of bias alone is not sufficient to invalidate an appraisal, the motion to dismiss the count of the complaint seeking invalidation of the appraisal was properly allowed under Mass. R. Civ. P. 12 (b) (6).

3. Covenant of good faith and fair dealing. In a separate count of the complaint, Buffalo-Water alleges that the defendant violated the covenant of good faith and fair dealing by insisting that Buffalo-Water sell the Winthrop Building despite

knowing that the valuation was tainted by Cushman's potential conflict of interest with Fidelity.

The covenant of good faith and fair dealing "requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract" (quotation and citation omitted). T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570 (2010). Although "[e]very contract implies good faith and fair dealing between the parties to it," the "scope of the covenant is only as broad as the contract that governs the particular relationship" (quotations and citations omitted). Id. at 569-570. In other words, the covenant of good faith and fair dealing "cannot create rights and duties not otherwise provided for in the existing contractual relationship" (quotation and citation omitted). Id. at 570.

Nothing in the contractual agreements entered into by Buffalo-Water and Fidelity prohibits Fidelity from demanding a sale based on the price established in Skinner's appraisal. The option agreement clearly states that the property's value would be determined through an appraisal process, every step of which was followed here. It does not require the parties to refrain from selecting an appraiser whose company had previously contracted with one of the parties. Nor does the option agreement or the engagement agreement require disclosure of

potential conflicts of interest that could create the appearance of bias.  Buffalo-Water may not insert these conditions into its contract with Fidelity through the side door of the covenant of good faith and fair dealing.  Because Buffalo-Water has alleged no facts tending to show that Fidelity injured its rights under the option agreement or the engagement agreement, we conclude that the judge properly dismissed the claim for breach of the implied covenant of good faith and fair dealing.[14]

Conclusion.  For the reasons stated above, we affirm the order allowing the defendant's motion to dismiss the complaint.

So ordered.

---

[14] Buffalo-Water contends that it was error for the judge to dismiss its claim for breach of the covenant of good faith and fair dealing without specifically referencing this claim or providing a basis for the dismissal.  "Findings of facts and conclusions of law," however, "are unnecessary on decisions of motions under Rule[] 12 . . . ."  Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996).  Furthermore, because we review decisions on motions to dismiss de novo, our analysis is not affected by the judge's lack of explanation.  See Gabbidon v. King, 414 Mass. 685, 686 (1993) ("on appeal, we may consider any ground apparent on the record that supports the result reached in the lower court").