SUPERIOR COURT 
 
 MAURA HEALEY, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL FOR THE COMMONWEALTH OF MASSACHUSETTS v. UBER TECHNOLOGIES, INC. AND LYFT, INC.

 
 Docket:
 2084CV01519-BLS1
 
 
 Dates:
 March 25, 2021
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER DENYING DEFENDANTS’ MOTIONS TO DISMISS
 
 

             Uber and Lyft pay people to use their own vehicles to transport passengers. The Attorney General claims that both companies misclassify their drivers as independent contractors, rather than as employees, and do not pay or provide all wages and related benefits required by State law. She seeks a judgment declaring that Uber and Lyft drivers are employees, and an injunction requiring the companies to treat their Massachusetts drivers as employees, for the purpose of applying wage-related statutes.
            Uber and Lyft have moved to dismiss this action. They argue that the Attorney General may not seek a declaratory judgment because the complaint does not adequately allege that any drivers were denied benefits to which they would be entitled if they were employees, or that there is an actual controversy about the alleged misclassification. Uber, but not Lyft, also contends that the Attorney General lacks standing to seek declaratory relief.
            The Court will deny both motions to dismiss.
            There is no reason to dismiss the claim for declaratory relief. The Attorney General has identified an actual controversy that can be resolved by declaring whether Uber and Lyft have a duty to classify their Massachusetts drivers as employees. She has standing to seek such relief. And the allegations in the complaint plausibly suggest that Uber and Lyft misclassify their drivers and, as a result, deprive some drivers of required minimum wages, overtime, and sick leave. Nothing more is needed to state a claim for declaratory relief.
            Though the request for injunctive relief is set out in a separate count, it is not actually a separate cause of action. The Court need not decide at this stage whether the Attorney General may obtain such additional relief if she proves the facts alleged in the complaint.
 
                                                            -1-
 
            1. Claim for Declaratory Judgment. The complaint states a viable claim for declaratory relief because there is an actual controversy between these parties as to whether Uber and Lyft must treat their drivers as employees for the purposes of Massachusetts wage and hour laws, the Attorney General has standing to enforce those laws, all necessary parties have been joined,[1] and the facts alleged plausibly suggest that the Attorney General is entitled to the declaratory judgment she seeks. See generally Buffalo-Water 1, LLC, v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 18–20 (2018).
            The requirements that there be an “actual controversy,” see G.L. c. 231A, § 1, and that a party seeking declaratory relief must have standing are both aspects of subject matter jurisdiction, without which a court has no power to issue a declaratory judgment. See, e.g., Alliance, AFSCME/SEUI, AFL-CIO v. Common- wealth, 425 Mass. 534, 536 (1997) (ordering dismissal because court lacked jurisdiction to issue declaratory judgment without actual controversy); City of Revere v. Massachusetts Gaming Commission, 476 Mass. 591, 607 (2017) (standing is issue of subject matter jurisdiction with respect to declaratory judgment claims, just as in other cases).
            The further requirement that “the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant's motion to dismiss” comes from Mass. R. Civ. P. Rule 12(b)(6), as applied to a claim seeking declaratory judgment. See Buffalo-Water, 481 Mass. at 18. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, if true, would “plausibly suggest[] … an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). In applying this standard, the Court must assume the allegations in the complaint are true and “draw all reasonable inferences in plaintiff’s favor.” Buffalo-Water, 481 Mass. at 18.
 
---------------------------
 
[1]Neither Uber nor Lyft argues that the Attorney General failed to join any necessary parties as defendants. When the Attorney General seeks a declaratory judgment about whether Massachusetts statutory requirements apply in certain circumstances, there is no need to join everyone who could be affected by a decision “only as a precedent on an issue of law.” Attorney General v. Kenco Optics, Inc., 369 Mass. 412, 415 (1976).
 
                                                            -2-
 
            The declaratory judgment statute must be “liberally construed and administered” to accomplish the goal of removing uncertainty about legal rights and duties. G.L. c. 231A, § 9; accord Libertarian Ass’n of Massachusetts v. Secretary of the Commonwealth, 462 Mass. 538, 547 (2012). Courts must keep this in mind in deciding whether a complaint states a viable claim for declaratory relief. See Mitchell v. Secretary of Admin., 413 Mass. 330, 333 n.7 (1992); Sun Oil Co. v. Director of Division on Necessaries of Life, 340 Mass. 235, 239 (1960).
            1.1. Actual Controversy. The complaint adequately describes an actual controversy. It alleges that Uber and Lyft misclassify their drivers as independent contractors rather than as employees, and that as a result many drivers have been not received minimum wage, overtime, and earned sick time payments that are required under Massachusetts law. In their memoranda, Uber and Lyft expressly deny that their drivers should be treated as employees under the independent contractor statute (G.L. c. 149, § 148B), and thus implicitly contend that their drivers are not entitled to minimum wage, overtime, or earned sick leave payments that under Massachusetts law need only be paid to employees.[2]
            The Attorney General seeks to resolve a real dispute by seeking a declaration as to whether Uber and Lyft have a statutory duty to treat their drivers as employees. She did not file this action to seek an advisory opinion about an abstract question of law with no real-world consequences, as Uber and Lyft suggest. Instead, the Attorney General alleges that Uber and Lyft drivers have lost out on receiving very real benefits that Massachusetts law guarantees for all employees, but not for independent contractors. If Defendants’ obligations under the independent contractor statute were not declared in this action, then the Attorney General would almost certainly move forward with an enforcement action seeking penalties and perhaps compensation on behalf of individual drivers.
            This lawsuit therefore involves an “actual controversy” within the meaning of the declaratory judgment statute. See Libertarian Ass’n, 462 Mass. at 546–547. A dispute like this, about whether a party owes duties under a statute, may properly be resolved by a declaratory judgment. See Service Employees Intern. Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 334–336 (2014); G.L. c. 231A, § 2. And the allegations that Uber and Lyft will continue to violate
 
---------------------------
 
[2]See G.L. c. 151, § 1 (minimum wage); G.L. c. 151, §§ 1A–2 (overtime); G.L. c. 149, § 148C (earned sick leave).
 
                                                            -3-
 
the independent contractor statute and certain other wage and hour laws,      if they keep doing business as they have been, show that an actual controversy exists between the Attorney General and the defendants. Cf. St. George Orthodox Cathedral of Western Massachusetts, Inc. v. Fire Dept. of Springfield, 462 Mass. 120, 124 (2012) (actual controversy “plainly exists” where continued operation of existing fire detection and signaling system would violate local ordinance).
            If the complaint left any doubt about the existence of an actual controversy, which it does not, Defendants’ own public statements would make it clear. The Court takes judicial notice of disclosures by Uber and Lyft, in Form 10-Ks that they recently filed with the Securities and Exchange Commission, of what would happen if the Attorney General were to prevail in this case.[3] Just weeks ago, the defendants told current and potential investors that any declaration in this case that their Massachusetts drivers must be treated as employees either “would” (according to Uber) or “could” (according to Lyft) cause them to incur significant new costs to comply with minimum wage, overtime, and other
 
---------------------------
 
[3]In her memorandum of law, the Attorney General asked the Court to consider similar statements that Uber and Lyft made in the S-1 registration statements they filed with the SEC a year ago. Neither Defendant objected.
 
The Court concludes it is appropriate to consider Defendants’ more recent SEC disclosures as well. When deciding a motion to dismiss, a court may take judicial notice of matters of public record, Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), including SEC filings that are publicly accessible. See, e.g., Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc., 778 F.3d 228, 232 n.2 (1st Cir. 2015);  Rothman  v.  Gregor,  220  F.3d  81,  88  (2d Cir.  2000);  Schmidt  v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); Yates v. Municipal Mortg. & Equity, LLC, 744 F.3d 874, 881 (4th Cir. 2014); Hometown 2006-1 1925 Valley View, L.L.C. v.  Prime Income Asset Mgmt., L.L.C., 847 F.3d 302, 307 (5th Cir. 2017); Northstar Financial Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1043 (9th Cir. 2015); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-1277 (11th Cir. 1999); see also G.L. c. 233, § 76A (authenticated copies of SEC filings are admissible in evidence).
 
If Uber or Lyft were to object to the Court taking judicial notice of their recent 10-K filings, the Court would allow the Attorney General to amend her complaint to quote and attach relevant excerpts from these documents.
 
                                                            -4-
 
employee wage and benefit statutes.[4][5] Lyft has confirmed that this controversy is not merely hypothetical, stating in its memorandum of law that a finding that its Massachusetts drivers are employees “would require a root-and-branch reinvention of Lyft’s business.” Uber similarly states that such a declaration would “fundamentally reshape” the relationship between Uber and its drivers.
            Defendants’ arguments that the complaint does not describe an actual controversy cannot be squared with their own admissions about the likely impact if the Attorney General were to prevail in this case and obtain the declaration she seeks.
 
---------------------------
 
[4]See Uber’s Form 10-K for year ending Dec. 31, 2020, at 14 (filed Mar. 1, 2021), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1543151/00015 4315121000014/uber-20201231.htm (last visited Mar. 22, 2021) (“[I]n July 2020, the Massachusetts Attorney General filed a complaint against Uber and Lyft, alleging that drivers are misclassified, and seeking an injunction. If we do not prevail in current litigation … [and] as a result … we are required to classify Drivers as employees, we would incur significant additional expenses for compensating Drivers, including expenses associated with the application of wage and hour laws (including minimum wage, overtime, and meal and rest period requirements), employee benefits, social security contributions, taxes (direct and indirect), and potential penalties.”).
 
[5]See also Lyft’s Form 10-K for year ending Dec. 31, 2020, at 44 (filed Mar. 1,  2021), available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1759509/ 000175950921000011/lyft-20201231.htm  (last   visited   Mar.   22,   2021)   (“[O]n July 14, 2020, the Massachusetts Attorney General filed a lawsuit against us and Uber for allegedly misclassifying drivers on the companies' respective platforms as independent contractors under Massachusetts wage and hour laws, seeking declaratory and injunctive relief. We continue to maintain that drivers on our platform are independent contractors in such legal and administrative proceedings and intend to continue to defend ourself vigorously in these matters, but our arguments may ultimately be unsuccessful. A determination … that classifies a driver of a ridesharing platform as an employee … could harm our business, financial condition and results of operations, including as a result of: [1] monetary exposure arising from or relating to failure to withhold and remit taxes, unpaid wages and wage and hour laws and requirements (such as those pertaining to failure to pay minimum wage and overtime, or to provide required breaks and wage statements), expense reimbursement, statutory and punitive damages, penalties, … and government fines; [and 2] injunctions prohibiting continuance of existing business practices….”).
 
                                                            -5-
 
            1.2. Standing. The Attorney General has standing to seek declaratory relief for allegedly misclassifying drivers as independent contractors. Uber’s argument to the contrary is without merit.
            The Attorney General has broad rights to seek relief for a statutory violation “pursuant to the powers conferred by G.L. c. 12, § 10, and in accord with the Attorney General’s common law duty to represent the public interest and to enforce public rights.” Lowell Gas Co. v. Attorney General, 377 Mass. 37, 48 (1979). Under G.L. c. 12, § 10, the Attorney General is authorized and has a duty to “take cognizance of all violations of law … affecting the general welfare of the people,” and to bring “such criminal or civil proceedings … as he may deem to be for the public interest.” And under the common law, the Attorney General has broad power under the ancient legal doctrine of parens patriae[6] to bring suit to protect or vindicate the interests of Massachusetts citizens, where it would be impractical for individual citizens to seek relief on their own behalf.[7]
            In addition to these broad general powers, the Attorney General has been specifically granted “all necessary powers” to enforce G.L. c. 149, including §148B, which is the independent contractor statute. See G.L. c. 149, § 2. Though someone who misclassifies an employee as an independent contractor may be subject to criminal and civil penalties, that does not “limit the availability of other remedies at law or in equity.” See G.L. c. 149, § 148B(d)–(e). The declaratory judgment statute provides another “form of remedy” available to the Attorney General. Cf. East Chop Tennis Club v. Massachusetts Comm’n Against Discrim., 364 Mass. 444, 449 (1973).
 
---------------------------
[6]“Parens patriae means literally ‘parent of the country.’ ” Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 600 (1982). Parens patriae actions have their roots in the English common-law concept that the King or Queen had the right or responsibility or take care of people who were not legally competent to care for themselves or their property. Id. In this country, “[t]his prerogative of parens patriae is inherent in the supreme power of every State” and may be exercised to prevent “injury to those who cannot protect themselves.” Id., quoting Mormon Church v. United States, 136 U.S. 1, 57 (1890).
 
[7]See Commonwealth v. School Committee of Springfield, 382 Mass. 665, 665 n.1  (1981) (suit as parens patriae for the citizens of Springfield, seeking injunction requiring school committee to contract with private schools to serve children with special needs); Commonwealth v. Wiseman, 356 Mass. 251, 259 (1969) (suit as parens patriae for inmates held at Massachusetts Correctional Institute at Bridgewater, seeking to enjoin release of documentary film “Titicut Follies”).
 
                                                            -6-
 
Section 148B(e) thus makes clear that the Attorney General has standing to seek declaratory relief if she believes that is the best way to enforce the independent contractor statute in a particular case. It preserves the Attorney General’s broad discretion to seek “clarification of the situation” through a declaratory judgment before she tries to enforce a statute by seeking criminal sanctions, civil penalties, or compensatory damages. See Attorney General v. Kenco Optics, Inc., 369 Mass. 412, 415 (1976).
            1.3. Adequacy of Factual Allegations. The Attorney General has alleged facts sufficient to show that the drivers should be classified as employees because they perform services for Uber and Lyft that are within the usual course of the companies’ businesses and the drivers are subject to Uber or Lyft’s control and direction. See G.L. c. 149, § 148B; Weiss v. Loomis, Sayles & Co., Inc., 97 Mass. App. Ct. 1, 7, rev. denied, , 484 Mass. 1106 (2020) (control and direction); Carey v. Gatehouse Media Mass. I, Inc., 92 Mass. App. Ct. 801, 807–808 (2018) (usual course of business).
            Though Uber and Lyft deny that their drivers are employees, they concede that the complaint adequately alleges that both companies misclassified drivers. But the companies say this is not enough to state a claim that they have violated the independent contractor statute.
            Defendants’ primary argument for dismissal is that the Attorney General was required to allege facts plausibly suggesting that individual drivers were harmed because they were not treated as employees, but she failed to do so. Both parts of this argument are unavailing.
            Uber and Lyft start from a correct legal premise about the elements of a claim seeking relief directly under the independent contractor statute. If the Attorney General were seeking criminal or civil penalties against the defendants, she would have to allege and then prove not only that Uber and Lyft had misclassified drivers but also that as a result defendants failed to comply with some wage and hour statute. See G.L. c. 149, § 148B(d).
            But the Attorney General is not seeking penalties under § 148B(d). She seeks a declaratory judgment that Uber and Lyft drivers are employees who are protected by certain wage and hour laws, including the Wage Act, minimum wage statute, overtime law, earned sick time law, and specific anti-retaliation
 
                                                            -7-
 
statutes. As a result, the Attorney General need only allege facts sufficient to “state a claim for declaratory relief.” See Buffalo-Water, 481 Mass. at 18.[8]
            The Attorney General need not allege that any driver has suffered injury in order to state a viable claim for declaratory relief under G.L. c. 231A. See generally City of Boston v. Keene Corp., 406 Mass. 301, 304 (1989) (“[A] party seeking declaratory judgment need not demonstrate an actual impairment of rights.”). To the contrary, a party with standing may seek declaratory relief “either before or after a breach or violation” has occurred, “and whether any consequential judgment or relief” for actual damages “could be claimed … or not.” See G.L. c. 231A, § 1.
            The Attorney General may therefore seek a declaratory judgment without having to allege or show that any drivers have suffered actual injury from being misclassified. Cf. Entergy Nuclear Generation Co v. Department of Envtl. Prot., 459 Mass. 319, 324–325 (2011) (operator of Pilgrim Nuclear Power Station could seek declaratory judgment on whether it was subject to cooling water intake structure regulations, without waiting for enforcement action or modification to facility or permit that would trigger oversight under the regulations).
            In any case, the complaint does allege facts plausibly suggesting that some drivers had suffered real injury from being misclassified as independent contractors. The Attorney General alleges that “Uber and Lyft do not provide any compensation to drivers for their time spent while waiting or driving between fares,” and that “[a]s a result … many drivers receive less than minimum wage for the working time and … do not receive overtime for their excess hours,” all in alleged violation of G.L. c. 151, §§ 1 & 1A. And she further alleges that Uber and Lyft do not allow their drivers to seek or obtain paid sick leave—with limited, temporary exceptions for drivers diagnosed with COVID-
 
---------------------------
 
[8]The Boston Medical Center decision is not to the contrary, and Lyft’s reliance on it is misplaced. That case concerned a statute that provided for judicial review of Medicaid rates but explicitly excluded certain hospital rates from that process. See Boston Medical Center Corp. v. Executive Office of Health and Human Services, 463 Mass. 447, 454–455 (2012). The Supreme Judicial Court held that the declaratory judgment act cannot be used “to circumvent a legislative judgment denying a provider the opportunity to seek … judicial review of the reasonableness of payment rates” (citation omitted). Id. at 471. But declaratory judgment about a statutory scheme is available where, as in this case, the statutes “do not prohibit judicial review.” Nordberg v. Commonwealth, 96 Mass. App. Ct. 237, 242 (2019) (distinguishing Boston Medical Center).
 
                                                            -8-
 
19 or put under quarantine by a public health agency—in violation of the earned sick time law, G.L. c. 149, 148C.
            These allegations, together with the rest of the complaint, are sufficient to state a claim for the requested declaratory relief, even if they would not provide sufficient detail to state a claim for non-payment of wages or for criminal or civil penalties under the independent contractor statute.[9]
            2. Claim for Injunctive Relief. Count II of the complaint, which seeks an injunction, “states a claim for a remedy, not a cause of action.” See Unitrode Corp. v. Linear Tech. Corp., Middlesex Sup. Ct. civil action no. 98-5983, 11 Mass. L. Rptr. 145, 2000 WL 281688, at *5 (Mass. Sup. Ct. 2000) (Botsford, J.); accord, e.g., Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 n.3 (1st Cir. 2013) (“injunctive relief is not a stand-alone cause of action in Massachusetts”).
            Since the Attorney General has stated a viable claim for declaratory relief, there is no need to decide whether the allegations in the complaint, if proved to be true, would justify granting injunctive relief. See Kenco Optics, 369 Mass. at 415. This action may proceed whether or not the Attorney General would be able to obtain injunctive relief. Id.
ORDER
            Defendants’ motions to dismiss this action are both denied. The Court will hold a scheduling conference with the parties on April 14, 2021, at 3:30 p.m.
@/s/Kenneth W. Salinger Justice of the Superior Court
@March 25, 2021
 
---------------------------
 
[9]The Court agrees with the defendants that the complaint does not allege facts plausibly suggesting that Uber or Lyft have done anything that would violate the anti-retaliation statutes cited in the complaint, if their drivers were employees and thus protected by those laws. But such allegations are not required; the Attorney General has stated a viable claim without them.
 
                                                            -9-
 
 
xxz