SUPERIOR COURT 
 
 DR. SURESH C. SRIVASTAVA Plaintiff vs. ANUJ SRIVASTAVA, & others[1] Defendants

 
 Docket:
 21-2858-BLS1
 
 
 Dates:
 February 6, 2023
 
 
 Present:
 Peter B. Krupp Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON MOTION TO DISMISS
 
 

             Plaintiff Suresh C. Srivastava (“Suresh”) filed this case against his wife, Sunita Srivastava (“Sunita”), and his two sons, Amar Srivastava (“Amar”) and Anuj Srivastava (“Anuj”), alleging that they had frozen him out of ChemGenes Corporation (“ChemGenes”), the close corporation Suresh founded. In August 2022, the Court (Kazanjian, J.) dismissed 23 of the 24 counts in the First Amended Complaint with prejudice and the remaining count without prejudice. Judge Kazanjian granted Suresh leave to file a second amended complaint for declaratory relief regarding Anuj’s appointments as a director and executive vice president of ChemGenes and his authority to sign documents related to ChemGenes’ acquisition of property in Billerica. In his Second Amendment Complaint (“SAC”), Suresh has asserted two counts for declarations on these subjects. Anuj now moves to dismiss the SAC. For the following reasons, the motion is allowed in part and denied in part.
BACKGROUND
            The following is taken from the SAC and the bylaws attached thereto.
 
-------------------------------------
 
            [1]Harbor One Bank and Rhino Billerica Investors I, LLC.
 
                                                            -1-
 
            A. T he ChemGenes Bylaws
                        1. The Original Bylaws
            ChemGenes was incorporated in 1981. Several provisions of the original bylaws (“Original Bylaws”) are relevant to this action. Article II of the Original Bylaws grants the shareholders the power to vote for directors. Art. II, § 1. Article III sets the number of directors at four, Art. III, § 2, and requires three days notice prior to any special meeting of the Board. Art. III, § 5. Section 8 of Article III provides:
Newly created directorships resulting from an increase in the number of directors and vacancies occurring in the board for any reason except the removal of directors without cause may be filled by a vote of a majority of the directors then in office, although less than a quorum exists.
            Article IV concerns the company’s officers. It gives the directors the power to elect or appoint the president, vice president, secretary, and treasurer, and “[s]uch other officers and assistant officers as may be deemed necessary.” Art. IV, § 1. It also describes the officers’ duties. Art. IV, §§ 5-8. Suresh is the president of ChemGenes. With regard to the president, Article IV provides:
The president shall be the principal executive officer of the corporation and, subject to the control of the directors, shall in general supervise and control all of the business and affairs of the corporation. He shall, when present, preside at all meetings of the stockholders and of the directors. He may sign, with the secretary or any other proper officer of the corporation thereunto authorized by the directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts, or other instruments which the directors have authorized to be executed, except in cases where the signing and execution thereof shall be expressly delegated by the directors or by these by-laws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general shall perform all duties incident to the office of president and such other duties as may be prescribed by the directors from time to time.
Art. IV, § 5. With regard to the vice president, it provides:
 
                                                            -2-
 
In the absence of the president or in event of his death, inability or refusal to act, the vice-president shall perform the duties of the president, and when so acting, shall have all the powers of and be subject to all the restrictions upon the president. The vice-president shall perform such other duties as from time to time may be assigned to him by the president or by the directors.
Art. IV, § 6.
            Article V concerns the company’s ability to enter into contracts. It provides: “The directors may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the corporation, and such authority may be general or confined to specific instances.” Art. V, § 1. In addition, it states: “No loans shall be contracted on behalf of the corporation and no evidences of indebtedness shall be issued in its name unless authorized by a resolution of the directors. Such authority may be general or confined to specific instances.” Art. V, § 2.
            Lastly, as is relevant to the claims in the Second Amended Complaint, Article XI states: “These by-laws may be altered, amended or repealed and new by-laws may be adopted by a vote of the stockholders representing a majority of all the shares issued and outstanding.”
                        2. Amendment of the Bylaws
            Suresh alleges that “[t]he original bylaws of ChemGenes adopted at the time of incorporation in 1981 were never revoked or overridden.” SAC ¶ 11 (emphasis added). However, in the very next sentence, he alleges somewhat tentatively that “available information indicates that the only amendment by shareholders vote was to change the number of directors of the corporation from 4 to 3.”[2] I d. (emphasis added). In the light most favorable to plaintiff, this
 
-------------------------------------
 
[2]To bolster this argument, Suresh attaches to his opposition as Exhibit 5 a “ChemGenes Notice of Stockholder Vote at Meeting Held December 7, 1999.” The notice indicates that at a meeting on December 7, 1999, the ChemGenes stockholders voted to reduce the number of directors from four to three. The document attached as Exhibit 5 is, however, unsigned, and Suresh has not appended any amended bylaws reflecting the alleged reduction in the number of directors. For purposes of the motion to dismiss, the allegation at paragraph 11 of the SAC about a reduction in the number of directors from four to three is sufficient to establish an actual controversy.
 
                                                            -3-
 
paragraph of the SAC may be read to allege, as Suresh argues, that the only amendment to the Original Bylaws was a vote in 1999 to reduce the number of directors from four to three. As I must on a motion under Mass. R. Civ. P. 12, I assume the truth of this allegation. See, infra, at 6- 7.
            Contradicting this allegation, Anuj alleges that the bylaws were also amended in 1999 to give the Board the power to increase the number of directors and to reduce the notice period prior to a special meeting from three days to two.3 This factual dispute is not framed by the Second Amended Complaint, is not properly before me, and may not be resolved on a motion to dismiss.
            B. Special Meetings of the ChemGenes Board
            Prior to June 2020, the ChemGenes Board consisted of three individuals: Suresh, Sunita, and Amar. Suresh’s claims arise primarily from actions taken at special meetings of the Board in and after mid-2020. During the first of these meetings, which occurred on June 1, 2020, the Board voted to increase its size to five directors, named Anuj a director, created the office of executive vice president, and appointed Anuj to that position.[4] Amar and Sunita voted in favor of each measure, while Suresh voted against each measure. Suresh alleges:
 
-------------------------------------
 
[3]In support of his contention, Anuj points to bylaws attached to an unsigned Clerk’s Certificate, which ChemGenes’ counsel at the time purportedly sent to a bank in connection with a then-pending loan application.
 
[4]The Board granted the executive vice president authority to oversee (1) corporate purchases and sales, (2) production activities, and (3) the work of the company’s employees and independent contractors; and to perform such other duties and responsibilities as the Board may determine from time to time.
 
                                                            -4-
 
The effect of all of the above was to (1) improperly expand the board of directors, (2) improperly seat Anuj on the Board, (3) remove Suresh’s authority as president without first voting to remove Suresh’s authority and (4) to name Anuj as Executive Vice President to essentially take over the duties of the President; all wrongfully and without corporate bylaw authority.
SAC ¶ 24. See also Id. ¶ 33.
            The second meeting was held on October 28, 2020. Suresh objected that only two days notice was provided for the meeting. At that meeting, the Board (Amar, Sunita, and Anuj) authorized the purchase of property at 900 Middlesex Turnpike in Billerica (“the Property”) from defendant Rhino Billerica Investors I, LLC, for $11.5 million.
            The third meeting was held on December 17, 2020. Suresh objected to this meeting being called on two days notice. During the meeting, the Board (Amar, Sunita, and Anuj) approved the formation of CG 900 Middlesex LLC (“CG 900”), a wholly owned subsidiary that would hold title to the Property; authorized CG 900 to purchase the Property and the directors to execute the transaction documents; and approved financing the transaction with Harbor One Bank (“Harbor One”).
            The final two disputed meetings were held on December 28, 2020. At the first, the Board (Amar, Sunita, and Anuj) voted to discontinue the ChemGenes’ line of credit with Santander Bank. At the second, the Board convened as sole manager of CG 900 and voted (Amar, Sunita, and Anuj) to confirm the formation of CG 900 and the purchase and financing of the Property, to give authority to any of Amar, Sunita, and Anuj to execute the transaction documents, and to ratify any action taken by any ChemGenes or CG 900 director, manager, officer, or agent.
            C. The Present Claims for Declaratory Relief
            Suresh brings two declaratory judgment claims. Count I seeks declarations that (1) Anuj is not a member of the Board or an officer of ChemGenes; (2) the Board votes by Anuj must be
 
                                                            -5-
 
stricken from the corporate meeting minutes and related corporate filings; (3) the actions taken or voted on by Anuj must be stricken; and (4) Anuj has no authority as executive vice president and that all such authority must be returned to Suresh in his capacity as president. Count II seeks declarations that the documents signed by Anuj related to the purchase of the Property were executed without proper authority, and that the actions taken at the Board meetings to authorize the purchase are void and of no further force or effect. As explained below, Count I survives insofar as it seeks a declaration that Anuj was not properly named a director, but the remainder of the claims must be dismissed.
DISCUSSION
I.          The Rule 12(b)(6) Standard
            On a motion under Mass. R. Civ. P. 12(b)(6), a court must accept the factual allegations in the complaint as true and draw “all reasonable inferences” from those allegations in favor of plaintiff. Dunn v. Genzyme Corp., 486 Mass. 713, 717 (2021). The factual allegations in a complaint must set forth the basis for plaintiff’s entitlement to relief with “more than labels and conclusions,” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); and must “‘be enough to raise a right to relief above the speculative level[,]’ . . . ‘plausibly suggesting (not merely consistent with)’ an entitlement to relief.” Iannacchino, 451 Mass. at 636 (internal citations omitted), quoting Bell Atl., 550 U.S. at 555, 557. In addition to the complaint’s factual allegations, a court may consider matters of public record, orders, items appearing in the record of the case, exhibits attached to the complaint, and documents of which the plaintiff had notice and on which he relied in framing the complaint. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000); Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011).
 
                                                            -6-
 
            Where, as here, a motion to dismiss concerns a claim for declaratory relief, the court uses a two-step process to apply this standard. See Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 18 (2018). First, the court assesses if the claim is “properly brought;” that is, whether an actual controversy exists,[5] the plaintiff has standing to sue, and the plaintiff has joined all necessary parties.[6] I d. If a claim is “properly brought,” the court next examines “whether the facts alleged by the plaintiff in the complaint, if true, state a claim for declaratory relief that can survive a defendant’s motion to dismiss.” Id.
II.         Count I – Anuj’s Corporate Position
            Anuj does not meaningfully argue that Count I was improperly brought.[7] Instead, he contends that it fails to state a claim because, to the extent it relates to his appointment as
 
-------------------------------------
 
[5]An “actual controversy” exists when there is “a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation.” Bunker Hill D istrib., Inc. v. District Att’y for Suffolk Cnty., 376 Mass. 142, 144 (1978), quoting School Comm. of Cambridge v. Superintendent of Sch. of Cambridge, 320 Mass. 516, 518 (1946). “The ‘actual controversy’ requirement . . . is to be liberally construed and does not require . . . an actual impairment of rights.” Boston v. Keene Corp., 406 Mass. 301, 304 (1989) (internal citation omitted).
 
[6]“When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration.” G.L. c. 231A, § 8. See Buffalo- Water, 481 Mass. at 18; Service Employees Int’l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 338 (2014) (“The failure to name necessary parties may be jurisdictional in a declaratory judgment action, thereby precluding the court’s consideration of the issue.”). See also Memorandum of Decision and Order on Defendants’ Motions to Dismiss at 13 (Aug. 8, 2022) (Docket #50) (Kazanjian, J.) (“Of equal concern is the failure to join the other parties interested in the real estate transaction.”).
 
[7]Although Anuj argues generally that neither count was “properly brought,” the substance of his arguments in this regard concern Count II. At the hearing, Anuj conceded that Count I is not derivative and therefore Suresh has standing to bring the claim. To the extent he argues that there is no actual controversy or that necessary parties have not been named, I do not find these arguments availing as to Count I.
 
                                                            -7-
 
director, it is clear from Suresh’s allegations and the Original Bylaws that he (Anuj) was properly named to the Board. Specifically, Anuj contends that whereas Suresh alleges “[t]he original bylaws of ChemGenes . . . were never revoked or overridden,” SAC ¶ 11, his appointment was valid because the Original Bylaws establish four director seats, empower the Board to fill vacancies, and at the time of his appointment, there was such a vacancy (only three of the four seats were filled). Suresh’s allegation that prior to Anuj’s appointment the shareholders reduced the Board from four to three members establishes an actual controversy on this point. Accordingly, Count I survives to the extent it concerns Anuj’s appointment as director.[8]
            The same is not true for the remainder of Count I related to Anuj’s appointment as executive vice president. Suresh asserts that Anuj’s appointment stripped him of his duties as president, and that the duties assigned to Anuj went beyond those that may be assigned a vice president under the Original Bylaws. Suresh’s contention has three flaws. First, the Original Bylaws expressly permit the Board to create, in addition to the listed officers, “[s]uch other officers and assistant officers as may be deemed necessary.” Art. IV, § 1. The office of executive vice president is a new office, not the “vice president” referenced in the Original Bylaws. Second, even if the position could be viewed as being the equivalent of a “vice president,” Article IV explicitly allows the Board to assign the vice president certain “other duties,” which is precisely what the Board did here. See Art. IV, § 6. Third, the Board did not transfer any presidential powers to Anuj that were expressly required to be held by that office. The Original
 
-------------------------------------
 
[8]At the hearing, defense counsel indicated that ChemGenes plans to notice and conduct a shareholders’ meeting sometime soon for, among other purposes, a vote on and ratification of Anuj’s appointment as a director. Such an action could well moot the surviving claim in this case.
 
                                                            -8-
 
Bylaws provide that the president “shall in general supervise and control all of the business and affairs of the corporation.” Art. IV, § 5 (emphasis added). The president’s role does not explicitly require supervision over the specific responsibilities the Board assigned to Anuj, which concern the management and supervision of sales, purchases, production, employees, and independent contractors. In addition, the Original Bylaws place the president’s power under “the control of the directors.” Id. As a result, the Board is the ultimate arbiter of presidential authority. Suresh has failed to state a claim regarding whether Anuj was properly named executive vice president.
III.       Count II – The Property Purchase and Financing
            Anuj argues that Suresh lacks standing to pursue Count II because the relief sought is derivative in nature and Suresh has failed to comply with Mass. R. Civ. P. 23.1 and G.L. c. 156D, § 7.42. I agree. As the Supreme Judicial Court has stated:
To determine whether a claim belongs to the corporation, and is therefore derivative, a court must inquire whether the shareholders’ injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock[W]hether a claim . . . must be pursued derivatively depends on whether the harm [plaintiffs] claim to have suffered resulted from a breach of duty owed directly to them, or whether the harm claimed was derivative of a breach of duty owed to the corporation.
International Bhd. of Elec. Workers Loc. No. 129 Benefit Fund v. Tucci, 476 Mass. 553, 557- 558 (2017) (internal quotes omitted). Here, Suresh has failed to allege any individualized harm arising from the purchase of the Property or the Harbor One loan. Unlike Count I, where the declarations directly touch his role as director/president, the declarations he seeks in Count II only indirectly affect him as a shareholder.
            Anuj further contends that Suresh has failed to join indispensable parties, namely, ChemGenes and CG 900. This argument also has merit. Suresh originally named these entities in his First Amended Complaint, but did not include them in the SAC. As Anuj argues, because
 
                                                            -9-
 
these companies are parties to the purchase of the Property and are the borrower and guarantor of the loan from Harbor One, they are equally affected by the declaratory judgment Suresh seeks and so must be named. See, supra, at 7 n. 6.[9]
            Even setting aside these defects, Suresh has not stated a claim for relief in Count II. Suresh contends that Anuj did not have authority to execute the Harbor One loan or other transaction documents. This contention fails because Anuj’s status as a properly appointed officer or director of ChemGenes did not affect his authority to execute the transaction documents related to, or concerning the financing of, the purchase of the Property. The bylaws permit the Board to “authorize,” not just officers or directors, but “any . . . agent” to execute contracts of any kind. See Art. V, § 1. Suresh alleges that the Board authorized Anuj to execute the documents in connection with the Property acquisition and the Harbor One loan.
            Finally, Suresh claims that the Property acquisition and financing were invalid because Anuj voted to authorize them, although he was not properly a director. This argument fails to salvage Count II. Anuj’s vote was not necessary to the passage of these measures. Both Sunita and Amar voted to approve the measures, and their votes were sufficient to outvote Suresh. Anuj’s vote was simply surplusage. See 2 Fletcher Cyc. Corp. § 426 (“[T]he validity of a resolution or other action is not affected by the fact that a disqualified director was present or voted, if there was a quorum without them and if the necessary majority vote in favor of the
 
-------------------------------------
 
[9]Anuj also argues no actual controversy exists because Suresh conceded in his appellate brief challenging the denial of his motion for preliminary injunction “that at this point in time even though the Court has broad equitable powers, the purchase of the new corporate headquarters cannot be un-done.” This single statement is not sufficient to conclude that no actual controversy exists given the nature of the broader declarations sought in Count II.
 
                                                            -10-
 
resolution or act did not include that director’s vote. In other words, an interested director’s vote is a mere nullity.”) (footnote omitted).[10] Count II therefore must be dismissed.
ORDER
            Defendant Anuj Srivastava’s Motion to Dismiss (Docket #53) is D ENIED as to Count I insofar as it seeks a declaration that Anuj Srivastava was improperly appointed as director, but is otherwise ALLOWED.
 
 
-------------------------------------
 
[10]Although Counts I and II do not expressly seek a declaration on this issue, Suresh alleges that the special meetings on October 28, 2020, and December 17, 2020, were called on less than three days notice. He suggests that insufficient notice rendered the preliminary (or ultimate) approvals for the real estate acquisition, the formation of CG 900, and the Harbor One loan void or ineffective. SAC ¶¶ 35, 41. Such procedural defects, if any, were cured at the first special meeting of the Board on December 28, 2020, which was preceded by the notice required under the Original Bylaws. The minutes of this meeting, which the SAC explicitly references and which are attached as Exhibit 3 to Anuj’s supporting memorandum, show that the majority of the Board voted to ratify the previous Board votes concerning the real property acquisition, the formation of CG 900, and the Harbor One loan. I may consider these minutes without converting the motion to one for summary judgment.
 
                                                            -11-
 
xxz